342 F.2d 225
 Jerry L. LOCKETT, Gwendolyn Lockett and Jim H. Lockett, Jr., Minors by Armanda Lockett, Their mother and next friend, Appellants,
v.
BOARD OF EDUCATION OF MUSCOGEE COUNTY SCHOOL DISTRICT, GEORGIA, et al., Appellees.
 No. 21662.
 United States Court of Appeals Fifth Circuit.
 February 24, 1965.
 
 Derrick A. Bell, Jr., Jack Greenberg, New York City, Albert W. Thompson, Columbus, Ga., Donald L. Hollowell, Atlanta, Ga., Constance Baker Motley, George B. Smith, Inez V. Smith, New York City, for appellants.
 J. Madden Hatcher, A. J. Land, Columbus, Ga., for appellees.
 Before TUTTLE, Chief Judge, MOORE* and BELL, Circuit Judges.
 BELL, Circuit Judge.
 
 
 1
 This appeal presents issues arising out of a suit to desegregate the public school system of Muscogee County (Columbus), Georgia. Several months prior to suit the school Board had voluntarily adopted and activated a stair-step, one grade per year transfer type plan of desegregation commencing with the twelfth grade in September 1964. The suit attacked the maintenance of a compulsory biracial school system wherein school children were assigned to public schools on the basis of race through the perpetuation of dual school zones or attendance lines based on race, and through the assignment of teacher and administrative personnel on a racial basis. The prayer was for an end to these racial distinctions or, in the alternative, for a decree directing the school Board to submit a plan for the complete reorganization of the school system into a unitary, nonracial system.
 
 
 2
 By way of answer the Board admitted that prior to the promulgation of the desegregation plan they operated and maintained separate schools for Negroes, and that teacher and administrative personnel was assigned on a racial basis. It was asserted however, that the Board had begun a plan of school desegregation and the prayer was for court approval of the plan.
 
 
 3
 A motion for a preliminary injunction came on to be heard, and by agreement the case was tried at that time on its merits. The District Court denied the prayer for injunction, both temporary and permanent, approved the Board's plan, and deferred consideration of the teacher and administrative personnel assignment question. Jurisdiction was retained for such other and further proceedings and orders as might be deemed appropriate in the light of developing circumstances.
 
 
 4
 The issues presented by appellants' assignments of error are three in number. Did the court err in denying the injunction? Did the court err in refusing to rule on the validity of assigning teacher and administrative personnel on a racial basis? Was the approval of the grade a year plan, both as to speed of desegregation and in the use of a transfer plan for pupil assignment, error? We affirm with respect to the denial of the injunction and as to the postponement of the teacher and administrative personnel question. We reverse as to the plan, both on the question of speed and the use of a transfer method of assignment. We do note in reversing, the fact that the school Board filed, prior to argument of the case in this court and without objection, a resolution of the Board which disclosed that commencing in September 1965 grades nine, ten and eleven in addition to grade twelve are to be desegregated and on a quasi-freedom of choice basis as distinguished from the plain transfer plan now in use.
 
 
 5
 There is little more that a court may add at this late date to what has already been written with regard to the federal constitutional requirement that the schools be operated without discrimination based on race, and as to what is required in the desegregation process necessary in the conversion of segregated school systems. The Supreme Court enunciated this requirement more than ten years ago in Brown v. Board of Education, 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873. More than nine years ago the court decreed that desegregation must be accomplished "with all deliberate speed." Brown v. Board of Education, 1955, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083. In Cooper v. Aaron, 1958, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5, the court, as it had in the second Brown case, stated that the burden was on school boards to establish that delay was necessary, reiterated that delay would not be countenanced because of disagreement with the constitutional principle involved, and added that community hostility or recalcitrance could not serve as a basis for avoiding the principle. After the second Brown decision, and before and subsequent to Cooper v. Aaron, many school systems were desegregated and court decisions ad infinitum were rendered. Out of the opinions accompanying these decisions arose a considerable body of law relating to the constitutional rights involved and to the various components of the school desegregation process. Much of that body of law was written in this circuit. The grade a year plan came into rather wide use but, with the passage of years, fell into judicial disfavor mainly because of the inability to offer proof sufficient to sustain the burden, which was on the school boards, that such delay was necessary. We sent up a warning flag in Davis v. Board of School Commissioners of Mobile County, 5 Cir., 1963, 318 F.2d 63, that the day was near at hand when grade a year plans would no longer pass muster. In Watson v. City of Memphis, 1963, 373 U.S. 526, 83 S.Ct. 1314, 10 L.Ed.2d 529; Goss v. Board of Education of the City of Knoxville, Tennessee, 1963, 373 U.S. 683, 83 S.Ct. 1405, 10 L.Ed.2d 632; and Griffin v. County School Board of Prince Edward County, 1963, 375 U.S. 391, 84 S.Ct. 400, 11 L.Ed.2d 409, the Supreme Court, in rather rapid fire order, made the point, in language understandable by all, that the doctrine of "all deliberate speed" could no longer be viewed, due to the passage of years, in the same context as when announced. Following these cases, the court in Calhoun v. Latimer, 1964, 377 U.S. 263, 84 S.Ct. 1235, 12 L.Ed.2d 288, where we had approved Atlanta's grade a year plan, see 321 F.2d 302, remanded the case to the District Court for reappraisal of the speed of the plan in light of Watson, Goss, and Griffin. It was then beyond peradventure that a shortening of the transition period was mandatory.
 
 
 6
 At that point, and after the lower court had entered judgment in the present case, this court rendered decisions in five cases involving plans for school desegregation. The cities involved were Birmingham and Mobile, Alabama; and Savannah, Brunswick, and Albany, Georgia. See Armstrong v. Board of Education of the City of Birmingham, 5 Cir., 1964, 333 F.2d 47; Davis v. Board of School Commissioners of Mobile County, 5 Cir., 333 F.2d 53; Stell v. Savannah-Chatham County Board of Education, 5 Cir., 1964, 333 F.2d 55; and Gaines v. Dougherty County Board of Education, 5 Cir., 1964, 334 F.2d 983. It is enough to say that the principles announced in the Stell case (Savannah and Brunswick school systems), and without going into the detail of the other decisions, are controlling and dispositive here. The plans here considered, like that of the Muscogee Board, commenced in the twelfth grade. We pointed out there and in the Gaines case that no inflexible standard was intended but that certain minimal standards, and a degree of uniformity, were necessary where a court is to approve or disapprove a plan. Albany had already desegregated the first and second grades. The court ordered that the twelfth grade be also desegregated so as to afford those students already in school some measure of desegregated education before graduation. The decision also provided that desegregation of the system be completed on the basis of adding two additional grades from the bottom and one additional grade from the top each year until all grades were included. This means that every grade in the Albany schools will have been desegregated with the beginning of school in September 1967. In the Savannah and Brunswick cases we laid down the rule that, where the plan begins with the twelfth grade, the first grade must also be included. Also students new to the system must be assigned on a nonracial basis to grades not reached by the plan. These requirements were on the reasoning of postponing the constitutional rights only of students already in school. This reasoning was first applied in this circuit in Augustus v. Board of Public Instruction of Escambia County, Florida, 5 Cir., 1962, 306 F.2d 862. A maximum of six years beginning with September 1964 was allowed to those systems just as was allowed in the Birmingham and Mobile cases which means that all grades in these systems will be desegregated by September 1969, or earlier, as we pointed out, if the school boards are unable to justify the delay on a future complaint.
 
 
 7
 The Muscogee County Board has now determined to desegregate grades nine and ten in addition to grades eleven and twelve which normally would be reached under their plan in September 1965. They must also, in conformity with the precedent of Stell include the first grade at that time.
 
 
 8
 Moreover, we have carefully studied this record in the light of these five recent decisions and the teaching of these Supreme Court decisions and conclude that four years including September 1965, that is by September 1968, is the maximum additional time to be allowed for the inclusion of all grades in the plan. We are not specifying the order of inclusion of grades except to say that the process must be continuous during the remaining time and from both ends. We add the caveat from Stell: the time here allowed is for a system having a plan "in some degree underway * * *" The rule has become: the later the start, the shorter the time allowed for transition.
 
 
 9
 As to the assignment of students under the plan, we now know from the most recent resolution that the school Board has switched from a transfer plan to a quasi or modified freedom of choice plan. We approve the use of a freedom of choice plan provided it is within the limits of the teaching of the Stell and Gaines cases. We emphasize that those cases require that adequate notice of the plan to be given to the extent that Negro students are afforded a reasonable and conscious opportunity to apply for admission to any school which they are otherwise eligible to attend without regard to race. Also not to be overlooked is the rule of Stell that a necessary part of any plan is a provision that the dual or biracial school attendance system, i. e., separate attendance areas, districts or zones for the races, shall be abolished contemporaneously with the application of the plan to the respective grades when and as reached by it. Cf. Augustus v. Escambia County, supra. And onerous requirements in making the choice such as are alluded to in Calhoun v. Latimer, 5 Cir., 1963, 321 F.2d 302, and in Stell may not be required.
 
 
 10
 What we attempted to do in the five cases of last summer, heretofore discussed, was to lay out minimal standards with some degree of discretion left in the hope that school boards and the District Courts where school boards fail, would invoke such standards. That is still our hope and purpose and it will be up to the school Board here to fill the interstices which will remain in the implementation of any plan for transition from a segregated to a desegregated school system. Implementation is, of course, best left to the school Board where there is a willingness to assume the responsibility that is so manifest under the law.
 
 
 11
 With respect to the question of desegregating the teaching and administrative personnel of the system, the District Court concluded that this question might be more appropriately considered by the school Board, and the court if necessary, after the desegregation plan had "progressed to an extent as would justify further consideration of these features." In the Augustus case, supra, and in Calhoun v. Latimer, supra, we indicated that this was not an improper course. We approve it now in this case with the added statement that the court was not precluded from taking up the question. See Board of Public Instruction of Duval County, Florida v. Braxton, 5 Cir., 1964, 326 F.2d 616, where we held such was permissible on the part of the trial court if thought necessary to fully implement the Supreme Court decision in Brown v. Board of Education.
 
 
 12
 Likewise, considering the record as a whole, we conclude that the District Court did not err in failing to enjoin the school Board. The record discloses a willingness to go forward. We, as was the District Court, are willing to rely on the integrity and good faith of the members of the school Board where they represent, as they have here, an intention to effectuate the law.
 
 
 13
 Affirmed in part; reversed in part; remanded for further proceedings not inconsistent herewith.
 
 
 
 Notes:
 
 
 *
 Of the Second Circuit, sitting by designation