**Ura Bernard LEMON, Sandra Lemon, Brenda Lemon, William H. Lemon, Jr., Tony Lemon, Infants, by their parents and next friends, William H. Lemon and Mrs. Nettie J. Lemon, et al.,**

v.

**The BOSSIER PARISH SCHOOL BOARD and Emmett Cope, Superintendent of Schools.**

**The United States of America, Intervenor.**

**Civ. A. No. 10687.**

United States District Court
W. D. Louisiana,
Shreveport Division.

April 13, 1965.

---

Jesse N. Stone, Jr., Shreveport, La., Norman C. Amaker, Jack Greenberg, and John Walker, New York City, for plaintiffs.

J. Bennett Johnston, Jr., Johnston & Johnston, Shreveport, La., Louis H. Padgett, Jr., Dist. Atty. for the 26th Judicial Dist., Bossier City, La., Jack P. F. Gremillion, Atty. Gen. of the State of Louisiana, Baton Rouge, La., William P. Schuler, Asst. Atty. Gen., of Louisiana, Baton Rouge, La., for defendants.

Nicholas de B. Katzenbach, Atty. Gen., Burke Marshall, Asst. Atty. Gen., St. John Barrett, Atty., U. S. Dept. of Justice, Washington, D. C., Edward L. Shaheen, U. S. Atty., Edward V. Boagni, Asst. U. S. Atty., Shreveport, La., for intervenor.

BEN C. DAWKINS, Jr., Chief Judge.

Here the parents of eight Negro children, suing on behalf of these children and others similarly situated, seek a prohibitory injunction restraining the Bossier Parish School Board and its Superintendent, Emmett Cope, from: (1) denying minor plaintiffs admittance to white schools; (2) operating a bi-racial school system and assigning students to schools with regard to race; (3) maintaining dual school zones or attendance area lines based on race or color; (4) employing teachers and other school personnel on the basis of their race or color; (5) approving budgets, policies and construction programs in the furtherance of a bi-racial school system. They pray that this relief be granted in its entirety by the end of the 1965–66 school year.

No dispute exists as to the facts, purely legal questions being presented.

The Government seeks to intervene in the action under the authority of Section 902 of the Civil Rights Act of 1964 (42 U.S.C.A. § 2000h–2).[1] Following a hearing upon the motions to intervene and for preliminary injunction plaintiffs moved for a summary judgment, and defendants moved to dismiss for failure to state a claim. Arguments were heard on all motions.

Plaintiffs are Negro children of persons in military service stationed at Barksdale Air Force Base, a United States defense establishment situated within Bossier Parish, Louisiana, and all reside on the base. It is agreed that all the children have been considered eligible to attend Bossier Parish public schools, and all presently are attending all-Negro schools in that Parish. They allege that they have been denied admittance to white schools after due application made, although there are white schools nearer to their residence than the schools they presently attend. They allege their applications were denied solely because of their race and the policy,

---

1. 42 U.S.C.A. § 2000h–2: "Whenever an action has been commenced in any court of the United States seeking relief from the denial of equal protection of the laws under the fourteenth amendment to the Constitution on account of race, color, religion, or national origin, the Attorney General for or in the name of the United States may intervene in such action upon timely application if the Attorney General certifies that the case is of general public importance. In such action the United States shall be entitled to the same relief as if it had instituted the action."

custom and practice of defendants in maintaining segregated schools.

Primarily, defendants' motion to dismiss is based upon the contention that plaintiffs have no standing to sue due to their lack of residence in Bossier Parish. In a well-written brief counsel for defendants point out that the Fourteenth Amendment provides that no state shall "deny to any person *within its jurisdiction* the equal protection of the laws." (Emphasis added.) As bedrock for their argument defendants rely on Humble Pipe Line Co. v. Waggonner, 376 U.S. 369, 84 S.Ct. 857, 11 L.Ed.2d 782 (1964) in which the Supreme Court held that the United States acquired and exercises exclusive jurisdiction over Barksdale Air Force Base.

They thus urge that since plaintiffs reside on Barksdale under the exclusive jurisdiction of the United States, they are not "within the jurisdiction" of Bossier Parish; hence that they do not fall within the ambit of the Fourteenth Amendment's equal protection clause. They further contend that due to their lack of residence in Bossier Parish plaintiffs have no *right* to attend Bossier schools. They claim that plaintiffs are merely *permitted* to attend schools in Bossier and that such permission may be withdrawn at any time.[2] They argue that since plaintiffs claim to represent a class of persons made up of all Negroes who reside in Bossier Parish and who are qualified or eligible to attend Bossier public schools, plaintiffs cannot maintain this class action because they do not reside in Bossier Parish and thus are not members of the class they purport and seek to represent.

Plaintiffs rely on Randall v. Sumter School District Number 2, Sumter, South Carolina, 232 F.Supp. 786 (E.D.S.C. 1964). There the court permitted minor plaintiffs, all of whom resided on Shaw Air Force Base, to maintain a suit to desegregate the public schools of Sumter County. Randall involved facts identical to those presented here, except that the issue presently raised by defendants apparently was not raised in that case.

Defendants contend that Randall differs from the present case since there the county had agreed by contract with the United States to provide public school education for the "federal children." See United States v. Sumter County School District No. 2, 232 F.Supp. 945 (E.D. S.C. 1964).

After oral arguments here plaintiffs submitted requests for defendants to admit the existence of a contract between the Bossier Parish School Board and the United States by which the school board agreed to furnish education to federal children. Plaintiffs also asked that defendants admit the payments of funds under such contract. Defendants denied the existence of any such contract and denied that any funds received by them from the United States were received thereunder.

The Government has filed the affidavit of the Assistant Commissioner and Director, Division of School Assistance, Office of Education, of the Department of Health, Education and Welfare, who is custodian of the official records showing payments made to defendants under 20 U.S.C.A. §§ 236–244 and 20 U.S.C.A. §§ 631–645. This affidavit shows that defendants received from the United States for school construction under 20 U.S.C.A. §§ 631–645 more than $1,860,000 between 1951 and 1964. No funds have been received *under the latter sections since* March 10, 1964.

It is to be pointedly noted, however, that some of these funds were expended upon construction of the school attended by six of the eight minor plaintiffs at the present time, and some of the funds were expended upon construction of the schools to which admittance is sought by seven of the eight plaintiffs, since these schools are nearer to their homes than the all-Negro schools they now attend.

---

2. Defendants contend that federal children attend Bossier Parish schools by license rather than by right. For a case holding to the contrary, see United States v. Sumter County School District No. 2, 232 F.Supp. 945 (E.D.S.C.1964).

In accordance with 20 U.S.C.A. § 636 the applications for these construction funds contained several "assurances," among which was an assurance substantially the same as the following set forth in the application for the last construction funds received by the board:[3]

"4. The Applicant's [School] Board's school facilities will be available to the children for whose education contributions are provided in Public Law 815, as amended, *on the same terms, in accordance with the laws of the State in which Applicant is situated, as they are available to other children in Applicant's school district*[.] " *(Emphasis added.)*

█ Both this Court, and the Court of Appeals for the Fifth Circuit, have recognized that by this provision defendants did not contract *intentionally* to provide desegregated schools for federal children. See United States v. Bossier Parish School Board, 220 F.Supp. 243 (W.D.La. 1963), aff'd per curiam 336 F.2d 197 (5 Cir. 1964); United States v. Madison County Board of Education, 326 F.2d 237 (5 Cir. 1964). Nonetheless, these assurances do constitute a contractual agreement by defendants to provide education for federal children on the same terms as they provide education to other children in the school district, in accordance with the laws of the State.

All Louisiana laws providing for segregation in public schools were declared unconstitutional in Orleans Parish School Board v. Bush, 242 F.2d 156 (5 Cir. 1957) cert. denied, 354 U.S. 921, 77 S.Ct. 1380, 1 L.Ed.2d 1436 (see also Bush v. Orleans Parish School Board, 188 F.Supp. 916 (E.D.La.1960), aff'd per curiam 365 U.S. 569, 81 S.Ct. 754, 5 L.Ed.2d 806). These Louisiana laws subsequently were re-

pealed. See La.Acts 1960, 1st Ex.Sess., Nos. 3–9 and La.Acts 1962, No. 128, § 1. We find *no* Louisiana law presently in effect which requires the school boards of this State to maintain segregated schools.

██ It is not contended that defendants could defend successfully a suit by a Negro resident of Bossier Parish to desegregate these same schools, because of the Supreme Court's ruling in Brown v. Board of Education of Topeka, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) and its myriad progeny. It necessarily follows that under the laws of Louisiana, read in the light of the United States Constitution, as interpreted by the Supreme Court, Negro residents have a right to attend desegregated public schools. Defendants by their contractual assurances have afforded rights to these federal children as third-party beneficiaries[4] concerning the availability of public schools. Such rights are identical in weight and effect to those rights possessed by children who are entitled to attend Bossier Parish schools simply because of residence instead of by contract.

█ Having thus obligated themselves defendants are now estopped by their contractual agreement, and their acceptance of federal funds paid pursuant thereto, to deny that plaintiffs are entitled to the same rights to school attendance as are resident children. Resident children are entitled to the equal protection of the laws granted by the Fourteenth Amendment, which permits Negro children to bring suits demanding desegregation of public schools. By their contract defendants are estopped to deny that federal children are in the class of persons entitled to bring such suits for the desegregation of schools in Bossier Parish. Plaintiffs are entitled to bring

---

**3.** The last application under which construction funds were received by the board was dated March 12, 1962, and was approved May 24, 1962. The last funds received under this application were received March 10, 1964.

**4.** See LSA–Civil Code Arts. 1890, 1902 (1950); 17A C.J.S. Contracts § 519(3),

519(4). When plaintiffs and the other federal children began attending Bossier Parish schools, they accepted the benefits of the contract, and thus are entitled to bring suit to enforce the contract.

this suit on behalf of the class consisting of all Negro children eligible to attend Bossier Parish schools, whether because of residence or contract. Plaintiffs' lack of residence in Bossier Parish, then, does not prevent their representing the class in this suit.

Defendants show by affidavit of the Superintendent of Schools for Bossier Parish that no funds have been received for construction under 20 U.S.C.A. § 631 et seq. since the passage of the Civil Rights Act of 1964 and that all funds received for maintenance and operation of the schools under 20 U.S.C.A. § 236 et seq. were received without the signing of any contract or assurances and were on a "no strings attached" basis. The school board received from the Government a payment of $446,338.00 on November 9, 1964, under this latter section for maintenance and operation of its schools during the 1964–65 school year. The board also received a similar payment of $157,302.00 November 13, 1964, as the last payment for the operation and maintenance of its schools during the 1963–64 school year. Both of these payments were accepted by the board without reservation.

■ It is true that no specific assurances were given by the board in return for payment of these maintenance and operation funds. However, the assurances given by the board when it received the construction funds under 20 U.S.C.A. § 631 et seq. still are binding upon it. The schools built with these funds still are in use, and some of them now are being attended by plaintiffs. These contractual assurances will continue to be binding on the board at least as long as it continues to use the facilities constructed with the funds for which the assurances were given.

■ We must further find that the board's acceptance of funds for maintenance and operation of schools during the 1964–1965 school year shows that defendants intended to abide by that contract by continuing to provide education for federal children. This acceptance constituted a further ratification of the contract by which defendants agreed to provide such education, and, therefore, it acted as a ratification of the assurances given when the construction funds were received.

This holding is not inconsistent with our decision in United States v. Bossier Parish School Board, supra, and the decision of the Fifth Circuit in United States v. Madison County Board of Education, supra. Those decisions did not hold that no contract existed between the Government and the school boards involved. They were concerned with whether the Attorney General was authorized to bring suit demanding desegregation of schools, if a contract was found to exist. Neither case dealt with the right of *individuals* to bring suits seeking desegregation of public schools.

Those decisions were based on two grounds: (1) that Congress had done nothing at that time to negative its original intention to provide funds without disturbing racial classifications in local school districts; and (2) that Congress expressly had not authorized the Attorney General to bring suits to desegregate schools under the contracts, but had provided an administrative remedy instead. See 20 U.S.C.A. § 642(b).

■ *Both bases for these decisions were changed by the Civil Rights Act of 1964.* By Section 601 of that Act [5] Congress expressly prohibited racial discrimination in any program receiving federal financial assistance, thus negating its original intention to provide funds without disturbing racial classifications. When defendants received and accepted federal funds for maintenance and operation of their schools under 20 U.S.C.A. §§ 236–244 after the passage of

5. 42 U.S.C.A. § 2000d: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

the Civil Rights Act of 1964,[6] they became bound by Section 601 and now are *obligated* to provide the education for which the payments were received, without racial discrimination. Plaintiffs, as pupils attending schools operated and maintained by these funds, are recipients of the rights conferred by Section 601, and as such are entitled to bring this suit. Section 601 gives plaintiffs standing to maintain this action as representatives of the class comprised of all children attending schools maintained and operated with federal financial assistance.

Consequently, plaintiffs are entitled to bring this class action either under Section 601 of the Civil Rights Act of 1964 or under the contractual assurances by which defendants are estopped to deny them the same rights to attend desegregated schools as are possessed by children of Negro residents of Bossier Parish.

The 1964 Civil Rights Act also expressly authorized the Attorney General to bring suits to desegregate schools. Section 407[7] of the Act authorizes the Attorney General to bring such suits when he has received a complaint that the school board is depriving children of the equal protection of the laws. He also must certify that the signers of the complaint are unable to maintain legal proceedings for relief, and he must give notice and a reasonable period for adjustment.

Section 902 of the Act[8] permits the Attorney General to intervene in actions brought in Federal Courts seeking relief from a denial of equal protection of the laws. It further provides that "[i]n such action the United States shall be entitled to the same relief as if it had instituted the action." It is under this section that the Government seeks to intervene here.

Defendants contend that before the Attorney General may intervene under Section 902 he must comply with the requirements of Section 407. No such interpretation is indicated by the language of the Act, and we think none was intended. Section 902 merely requires the Attorney General to certify that the case is of public importance, which he has done in this case. The obvious intent of Congress was to permit interventions by the Attorney General in cases of this kind, and for this reason the Government's motion to intervene must be granted.

Able counsel for defendants has cited several authorities concerning the lack of a duty on the part of a state to furnish access to public schools to non-residents, but we do not think these authorities aid in disposition of this case, for two reasons. First, the cases and treatises relied on came well before the Supreme Court decision in Brown v. Board of Education of Topeka, supra, held racial discrimination in public schools to be unconstitutional. Second, the cited authorities do not deal with situations in which the local school board contracted to provide education to non-residents on the same basis as it is provided to residents.

For the foregoing reasons defendants' motion to dismiss is denied, and plaintiffs' motion for summary judgment is granted. The Government's motions to intervene and for summary judgment also are granted. Plaintiffs and intervenor are entitled to an injunction against defendants in accordance with the attached order.

### DECREE

Pursuant to the findings of fact and conclusions of law contained in the opinion rendered this date:

1. It is ordered, adjudged and decreed that the Bossier Parish School Board, its Superintendent, Emmett Cope, their agents, employees, attorneys, successors in office and all those acting in

---

6. The effective date of the Civil Rights Act of 1964 was July 2, 1964, before the commencement of the 1964–65 school year.

7. 42 U.S.C.A. § 2000c–6.

8. 42 U.S.C.A. § 2000h–2.

concert with them are hereby permanently enjoined and restrained from:

   a. Continuing to refuse to admit minor plaintiffs to the schools which they would attend if they were white;

   b. Continuing to assign students to schools with regard to race or color;

   c. Continuing to operate a compulsory bi-racial school system in Bossier Parish, Louisiana;

   d. Continuing to maintain dual school zone or attendance area lines based on race or color;

   e. Continuing to approve budgets, construction programs, policies, curricula and programs designed to perpetuate, maintain or support a school system operated on a racially segregated basis.

2. It is further ordered that, since primary responsibility therefor rests with defendants, they shall prepare and submit to the Court a plan for the desegregation of Bossier Parish schools in accordance with paragraph 1 of this Order beginning with the 1965–1966 school year. This plan shall provide that desegregation will progress with all deliberate speed until all grades in all schools are included. The speed and manner as to which the schools are desegregated shall be in accordance with the requirements set forth by the Fifth Circuit Court of Appeals in the following cases: Davis v. Board of School Commissioners of Mobile County, Alabama, 318 F.2d 63 (5 Cir. 1963); Armstrong v. Board of Education of the City of Birmingham, Jefferson County, Alabama, 333 F.2d 47 (5 Cir. 1964); Davis v. Board of School Commissioners of Mobile County, Alabama, 333 F.2d 53 (5 Cir. 1964); Stell v. Savannah-Chatham County Board of Education, 333 F.2d 55 (5 Cir. 1964); Gaines v. Dougherty County Board of Education, 334 F.2d 983 (5 Cir. 1964); Lockett v. Board of Education of Muscogee County School District, Georgia, 342 F.2d 225 (5 Cir. 1965).

3. Defendants may submit one or more alternate plans and may designate the order of preference assigned by them to the plan or plans. All plans must be submitted within 30 days, after which counsel for plaintiffs will have 15 days to respond.

4. The question of desegregation of teaching and administrative personnel in the Bossier Parish schools will be deferred until the plan for desegregation of pupils, as finally approved, either has been accomplished or has made substantial progress. Augustus v. Board of Public Instruction of Escambia County, Florida, 306 F.2d 862 (5 Cir. 1962); Calhoun v. Latimer, 321 F.2d 302 (5 Cir. 1963); and Lockett v. Board of Education of Muscogee County School District, Georgia, 342 F.2d 225 (5 Cir. 1965).

5. Jurisdiction of this cause is retained for such further orders as may be necessary, just and proper.