James H. HENDERSON, Jr., Edythe Jeannelle Henderson and Eryn Janyce Henderson, minors, by their father and next friend, James H. Henderson, Sr.,

Alice Perry and Antoine Perry, minors, by their father and next friend, Tom Perry,

Raymond Boudreaux Derouin, a minor, by her mother and next friend, Ethel Derouin,

v.

IBERIA PARISH SCHOOL BOARD, a corporation, and F. F. Wimberly, Superintendent.

Civ. A. No. 11126.

United States District Court
W. D. Louisiana,
Lafayette Division.

June 23, 1965.

Supplemental Opinion July 6, 1965.

A. P. Tureaud, New Orleans, La., for plaintiffs.

Knowles Tucker, Dist. Atty., Iberia Parish, New Iberia, La., for defendants.

PUTNAM, District Judge.

This class action is brought by plaintiffs, Negro children residing in the Parish of Iberia, Louisiana, against the School Board of the Parish, its members, superintendent, agents and employees and all others acting in concert with them, seeking to enjoin what is alleged to be a biracial or segregated school system. The defendants have answered, denied the allegations of the complaint, and while admitting that the school system of the parish is biracial, have affirmatively advanced the contention that it is nondiscriminatory and have attached to their answer and made part thereof a statement of the operational procedures employed by the Board in assigning pupils to the schools under their administration.

All minor plaintiffs being properly before the Court, issue being joined, the parties have, by stipulation of counsel entered into at a preliminary pretrial conference held in Lafayette on June 21, 1965, submitted all issues for adjudication by the Court on the face of the pleadings and defendants' attached exhibits.

It would appear from the procedures presently in use by the Board that, in theory at least, the system is nondiscriminatory. This plan has been in operation in Iberia Parish for the past ten years, and no applications for registration by Negroes in any all white schools have been received during this period. The application forms, with the exception of Form C, which is a request for original admission to the public schools, provide for selection of the school to be attended by the applicant accompanied by parental request therefor. Assignment is made by the Board through its Superintendent and his staff, after meeting with all principals of the Parish schools, and all applications processed according to accepted criteria in general use in the field of education.

A majority of the Board, the Superintendent and his assistant, Mr. Knowles Tucker, District Attorney of Iberia Parish, in his capacity as legal advisor to the Board and Mr. A. P. Tureaud of New Orleans, counsel for plaintiffs, attended the pretrial conference mentioned above. The Court was impressed by the conscientious attitude of those present, the desire of all to frankly discuss the

problems involved in this delicate area and to anticipate problems that might arise during any period of transition. While the general discussion was not recorded (the conference was informal), the Court makes these observations as a part of this record because the good faith of the Board and its supervisors and an impartial consideration of the rights of all people affected is essential to the success or failure of the plan hereinafter envisioned.

■ One basic proposition now established beyond dispute is that there is *no* Louisiana law presently in effect which requires any school board to maintain segregated schools. In Lemon v. Bossier Parish School Board, 240 F.Supp. 709, 713 (W.D.La. Apr. 13, 1965), this is concisely stated by Chief Judge Ben C. Dawkins, Jr., as follows:

> "All Louisiana laws providing for segregation in public schools were declared unconstitutional in Orleans Parish School Board v. Bush, 242 F.2d 156 (5 Cir. 1957) cert. denied, 354 U.S. 921, 77 S.Ct. 1380, 1 L.Ed. 2d 1436 (see also Bush v. Orleans Parish School Board, 188 F.Supp. 916 (E.D.La.1960), aff'd per curiam 365 U.S. 569, 81 S.Ct. 754, 5 L.Ed.2d 806). These Louisiana laws subsequently were repealed. See La.Acts 1960, 1st Ex.Sess., Nos. 3–9 and La. Acts 1962, No. 128, § 1. We find *no* Louisiana law presently in effect which requires the school boards of this State to maintain segregated schools."

This decision further emphasizes that under Louisiana law, responsibility for the administration of local school districts rests exclusively with local school boards.

■ The School Board of Iberia Parish, while following procedures which are nondiscriminatory, has never officially adopted a basic plan for the desegregation of the public schools of the parish. Therein lies the rub. It is the opinion of the Court that the rules of law evolving from Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), as expressed by the Fifth Circuit Court of Appeals in its decisions since the opinion in that case, require formal adoption of such a plan by the Board. See: Calhoun v. Latimer, 321 F.2d 302 (1963); Hall v. West, 335 F.2d 481 (1964); Armstrong v. Board of Education, 333 F.2d 47 (1964); Stell v. Savannah-Chatham County Board, 333 F.2d 55 (1964); Lockett v. Board of Education, 342 F.2d 225 (1965); Bivins v. Board of Public Education, 342 F.2d 229 (1965).

While the principles announced in the foregoing cases are by now well known to counsel and the Court, we hereafter briefly review them for the benefit of the Board Members and other school officials for guidance in formulating the plan to be adopted by them pursuant to the order which will be entered this day.

■ In the Armstrong and Lockett cases, supra, the following propositions were established: (1) the responsibility for providing a constitutional plan for desegregation lies with the School Board; (2) a plan based on freedom of choice (such as we find in the procedures used here), must provide for adequate notice to be given so that Negro students are afforded a reasonable and conscious opportunity to attend any school to which they are otherwise eligible, without regard to race; (3) the abolition of dual systems, zones, separate attendance areas, etc., at the same time as the plan becomes effective as to any grade when reached by it, is required, as well as the elimination of administrative procedures for hearing of complaints arising from the operation of the plan as applied to individual applications and requests for transfer. These are the basic guide lines for any plan to be advanced by defendants.

In Calhoun, supra, the Court struck down testing criteria based upon personality interviews, etc., and stated that no standard requiring that an applicant score a grade on scholastic ability and achievement tests equal to the average of the class to which transfer is sought,

might be utilized, *nor any other requirement used where the same is applied only to Negro students seeking transfer and assignment.*

The jurisprudence in this and other circuits is exhaustively reviewed in the Stell case, supra, decided July 24, 1964. In that case with reference to freedom of choice, it is said:

"This freedom of choice, with schools no longer being designated as white or Negro, in the grades to which the plan of desegregation has reached means that each child in the system may attend the school he chooses to attend, without regard to race so long as space is available in the school, and where it is not available to all it is to be awarded on the basis of the proximity of the residence of the pupil to the school. * * * " (333 F.2d 55, p. 65)

The foregoing brief comment upon the case law is by no means to be taken as complete and all inclusive. The cases cited are considered by us as being those which, in more recent months, have spelled out in unmistakable terms the minimum requirements of any plan for desegregation, and the standards by which the operation of such plan is to be judged. Precedents can be found to fit almost any conceivable situation that may hereafter arise and the defendants in this case should work closely with their counsel in resolving future issues.

Plaintiffs and other members of the class affected must also realize that with recognition of their rights, guaranteed to them by the Constitution and now expressly enacted into law by the Civil Rights Act of 1964, Title IV, Secs. 401–410, 42 U.S.C.A. § 2000c thru § 2000c–9, insofar as obtaining federal funds for the operation of public school systems is concerned, they will be entitled to no extra privileges or favored treatment. Restraint will be required, good judgment is demanded. While judicial review of denials or requests for transfers and admission will be available, frequent appeals to the Courts for redress of imagined wrongs will be disruptive of the orderly administration of the school system and, in consequence, detrimental to the progress which is sought by all. In this regard, counsel for plaintiffs also have their work cut out for them.

Paragraph 4 of the prayer seeks to require that assignment of teachers, principals and other professional personnel of the public schools on the basis of race or color be discontinued. We will defer action on this portion of the complaint at this time for the reason stated in Lockett, supra, and Bivins, supra.

A decree will be entered accordingly.

## SUPPLEMENTAL OPINION

Pursuant to our Order dated June 23, 1965, enjoining defendant School Board and its agents and representatives from continuing the operation of a biracial public school system in Iberia Parish, Louisiana, the defendants filed a plan with the Court for the desegregation of said schools. The plan is a brief statement of the procedures used heretofore by the Board for the placement of pupils attending schools under its supervision and control, and the criteria applied to all applicants.

It was the Board's position originally that the procedures in question were nondiscriminatory and that, up until the filing of this suit there had been no applications filed by members of the Negro race to attend any of the so-called "white" schools. The plan, now formally adopted by resolution of the Board, proceeds upon the initial assumption that all present assignments to schools within the system are considered adequate, but that applications for transfer and for original admissions into the system may be made at any time during the year, and placement will be effected by the Superintendent of Schools, applying four basic criteria, which we do not here reiterate.

Of particular significance are the features implicit in this plan that:

(a) Applications for *admission* or *transfer* may be made by all eligible students to any school in the system.

(b) These applications may be made in all grades in all schools.

(c) They will be acted upon by the Superintendent without regard to race or color of the applicant, and judged by him individually according to the criteria set up in the plan itself and the student placed in the school of his choice if consistent with the other considerations involved.

It need not be said that any applications received for admission or transfer should be acted upon in the order in which they are filed, and without unnecessary delay. It must also be understood by all applicants that the assignments already made by preregistration of students in the system will be respected, and in consequence there will be comparatively few admissions or transfers possible during the first two or three years of the operation of this plan.

In principle, the plan is very similar to the assignment system envisioned by the Alabama Pupil Placement Law, held to be constitutional on its face in Shuttlesworth v. Birmingham Board of Education, 162 F.Supp. 372 (N.D.Ala.1958), affirmed per curiam, 358 U.S. 101, 79 S.Ct. 221, 3 L.Ed.2d 145 (1958).

As in all such plans, the administration of the system will provide the test of its validity. We rely upon the good faith of the Board and its Superintendent, and expect to see substantial progress made toward desegregation of the schools in Iberia Parish in the fall term of 1965 within the limits of the criteria set out in the plan and the capacity of the present school facilities. With completion of the building program now in progress, this should be accelerated according to the individual freedom of choice manifested by the request of the parents (or persons in loco parentis), of the students within the system.

The resolution of the Board adopting the plan will be officially published, and, in addition to the publicity given our previous order and the action taken by the Board in response thereto, the revised notice to parents will be republished between the present time and August 15th. We deem this to be adequate notice to all concerned.

We are constrained to direct the attention of the Board and its able counsel to some of the cases decided in recent years pointing up the difficulties in the operation of such a system. The prohibition of the Fourteenth Amendment is directed against *discrimination*. In addition to the Fifth Circuit cases cited in our original opinion, we find further enlightenment in the following decisions: Bardley, et al. v. School Board of Richmond, Va., et al., 345 F.2d 310 (4 Cir. 1965); Downs v. Board of Education, Kansas City, Mo., 10 Cir., 336 F.2d 988, pp. 994, 995; Lee v. Macon County Board of Education, 221 F.Supp. 297, (M.D.Ala.1963); same case 231 F.Supp. 743, pp. 757, 758, (M.D.Ala. E.D.1964), (Alabama Placement Law); Bush v. Orleans Parish School Board, 204 F.Supp. 568 (E.D.La.1962); Borders v. Rippey, 184 F.Supp. 402, pp. 419, 420 (N.D.Tex.1960), (excellent discussion of "do's and don'ts" in the operation of such a plan, which must, of course, be read in the light of later Supreme Court and Court of Appeals decisions); and Dove v. Parham, 176 F.Supp. 242, 250 (E.D. Ark.1959).

The Board has been enjoined from continuing to maintain a biracial school system. They have come forward with a solution to this problem, which is their sole responsibility. This Court is especially aware of the administrative difficulties attendant upon the opening of all grades to all races this school year, to which course the Board is now committed. Difficulties will most certainly arise, but the Court has the utmost confidence in the ability of these Board Members and their Superintendent, representatives and advisors to conscientiously meet and solve them. The brief of counsel filed in support of the plan as written demonstrates a thorough and comprehensive study of the law and applicable principles, as well as complete understanding of the problems of administration to follow.

As we have pointed out previously, the people of the area are fortunate in having

public officials of this type. The people of the parish also have a duty during the period of transition: to obey and respect the law, and to exercise restraint, show good will, and abide by the decisions of the school authorities made in good faith. The Court believes that the people of Iberia Parish will not be found wanting in these qualities, upon which the perpetuation of a government of law insuring individual freedom to all citizens depends.

An order will be entered approving the plan of desegregation filed herein by the Board on the 23rd day of June, 1965.[1]

APPENDIX "A"

IBERIA PARISH SCHOOL BOARD

Public School Assignment System

(1) In the latter part of April or the first part of May, parents or guardians are notified of pre-registration of first graders by the publishing of Form A in the newspaper and similar announcements on radio. This form is also sent by the principal of each school to families known by him to possibly have a child of proper age to enter the first grade in the fall.

(2) In May of each year, the Superintendent and his staff hold a meeting with the principals of the public schools. Each principal has an assignment card, Form E, on each child enrolled in his school at that time, and on all pre-registered first graders. These cards are counted and grouped in the grades the children will be in the following year.

At this meeting, children are assigned to the school and grade that they will attend the following year. Criteria used are:

    (a) Class sizes

    (b) Proximity to school

    (c) Multiple children in family

    (d) Parental request (special)

    (e) Special recommendations (Special Education, tests, etc.)

(3) With the close of school, the assignment of each individual child already enrolled in Iberia Parish Public Schools is placed on the child's report card, Form B, showing school and grade placement for the next school year. A post card, Form F, is mailed to the parent or guardian of each child pre-registered for 1st grade, notifying them of the school and grade to which the child has been assigned.

(4) With the close of school, each principal furnishes to the Superintendent a list, Form G, of the names, addresses and grades of each pupil assigned to that school. This assignment is final, unless application is made by the parent or guardian for re-assignment of the child or children by filling out Form D, or, in the case of pupils moving into the Parish, Form C. These forms must be submitted to the Superintendent for action.

(5) Two weeks after the close of school, a notice, Form H, to parents or guardians of school age children is published in the local paper, The Daily Iberian, official School Board journal, and is published in the paper several times thereafter during the summer.

As parents or guardians respond to the publication, and fill out either Form C or Form D, the child or children are assigned to schools and grades by the Superintendent. An assignment card, Form E, is given, or a post card is mailed, Form F, notifying them of their assignment.

(6) The names, addresses and grades of these children are added to or taken off, as the case may be, of the assignment lists, Form G, previously turned in to the Superintendent by the principal.

(7) With the opening of school, each principal is furnished a revised, up-

1. See attached copy of plan, Appendix "A".

to-date list of all children assigned to his school, giving name, address and grade of each child.

(8) Within one month after the opening day of school, the principal of each school furnishes to the Superintendent a complete list, Form 2–B, of all children assigned to and enrolled in his school, giving name, birthdate, grade and parents' names.

(9) During the school year, all newcomers requesting assignment of children to schools, and all persons desiring re-assignment from one school to another within Iberia Parish, are required to make application at the Iberia Parish School Board Office by filling out Form D or Form C and submitting these to the Superintendent. The parents or guardians are notified of the results of these requests by the Superintendent on Form E or Form F.

(10) Upon receiving either Form E or Form F, the parent or guardian must present this form to the principal of the school to which the child has been assigned. Upon receipt of either Form E or Form F, the principal accepts the child and enrolls him in the school.

(11) The child's name, birthdate, grade and parents' names are placed on the official school assignment roster, Form 2–B, by the Superintendent and staff.

(12) Any parent or guardian disagreeing with the assignment of his child or children by the Superintendent may appear before the Iberia Parish School Board to appeal the decision.

Form A

Dear Parents:

Parish-wide first grade registration will be held on Wednesday, May 5, 1965, at 9:00 A.M.

If your child is to enter the first grade in September of this year, this letter contains important information for you.

On the above date, please attend one of our public schools with your child and fill in the necessary forms for registration. You must bring your child's birth certificate or the Health Unit copy of the birth record. Do not bring the church record; it is not acceptable. No child can enter the first grade in September without a birth certificate.

We suggest that you be prepared to stay approximately one hour on Registration Day.

Only children born on or before January 1, 1960, are eligible to enter the first grade in September.

Principal

When your child enters first grade for the first time, he is required to have the following immunizations:

(1) A smallpox vaccination within three years of starting school.

(2) A completed series of diphtheria tetanus toxoid or a booster injection within one year of the starting day of school.

(3) Polio and measles immunizations are also recommended.

Form B

# Iberia Parish Public School

## CHILD PROGRESS REPORT

### GRADES 1 - 2 - 3

Report of: _____

School _____ Session _____

Teacher _____

Principal _____

Placement Next Year _____ Grade _____ School.

## TO PARENTS

The home and the school share a great common purpose in the growth and progress of children. The school makes a serious effort to promote the physical, emotional, mental and social development of your child.

This report contains three records, which are not intended for comparision with other pupils, but only to show the progress of your child. The first is a record of growth in school subjects. The second is an estimate of desirable qualities of citizenship. The third is a record of attendance.

There is no better method of reporting a child's progress to parents than through frequent conferences between parents and teachers. Since it is not always possible to arrange such conferences, a report card is necessary. If you wish to discuss your child's progress with the teacher, please ask the principal to arrange for a conference.

We shall appreciate the interest and cooperation which make possible our best work with your child.

F. F. Wimberly
Superintendent

(front side)

## SUGGESTIONS

1. Your child seems to be working up to ability. below ability. _____

2. Your child seems to be working up to ability. below ability. _____

3. Your child seems to be working up to ability. below ability. _____

4. Your child seems to be working up to ability. below ability. _____

5. Your child seems to be working up to ability. below ability. _____

6. Your child seems to be working up to ability. below ability. _____

## PARENT'S SIGNATURE

1. _____ 4. _____

2. _____ 5. _____

3. _____ 6. _____

## GRADES 1 - 2 - 3

### KEY TO GRADING

A—Excellent, Achieved by a very few.
B—Good, Above the average.
C—Average, The most frequent mark.
D—Below average, but passing.
F—Failing work.

A blank space indicates satisfactory work on a skill or trait.
An "X" indicates weakness.

| SUBJECT | 1 | 2 | 3 | 4 | 5 | 6 | Ave. |
|---|---|---|---|---|---|---|---|
| READING | | | | | | | |
| Understanding what he or she reads | | | | | | | |
| Developing a reading vocabulary | | | | | | | |
| Reading well orally | | | | | | | |
| ARITHMETIC | | | | | | | |
| Reading and writing numbers | | | | | | | |
| Mastering fundamentals | | | | | | | |
| Learning to solve thought problems | | | | | | | |
| SPELLING (2 and 3 only) | | | | | | | |
| Spelling correctly the words taught | | | | | | | |
| Spelling well in all written work | | | | | | | |
| WRITING | | | | | | | |
| Forming letters correctly | | | | | | | |
| Writing neatly | | | | | | | |
| LANGUAGE | | | | | | | |
| Developing creative ability | | | | | | | |
| Expressing ideas clearly | | | | | | | |
| SOCIAL LIVING | | | | | | | |
| Acquiring information and understandings | | | | | | | |
| Taking part in discussions | | | | | | | |
| Helping to plan and carry out group projects | | | | | | | |

### BASIC READING LEVEL

(X indicates child's present reading level)

| | | | | | | |
|---|---|---|---|---|---|---|
| Reading Readiness | | | | | | |
| Pre-Primer 1 | | | | | | |
| Pre-Primer 2 | | | | | | |
| Pre-Primer 3 | | | | | | |
| Primer | | | | | | |
| First Reader | | | | | | |
| Second Reader, Level 1 | | | | | | |
| Second Reader, Level 2 | | | | | | |
| Third Reader, Level 1 | | | | | | |
| Third Reader, Level 2 | | | | | | |

---

Pupil _____  Grade _____

### CITIZENSHIP EDUCATION:

The following statements constitute a list of ATTITUDES and HABITS which we believe are desirable for GOOD CITIZENSHIP. These apply to your child as stated, unless an X appears. An "x" means a poor or unsatisfactory report on the particular statement checked.

We especially request parents to cooperate with the school in helping children improve personal qualities.

### PERSONAL QUALITIES

| | REPORTING PERIOD | | | | | |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| WORK HABITS | | | | | | |
| Follows simple directions | | | | | | |
| Begins work promptly | | | | | | |
| Completes work begun | | | | | | |
| Uses and cares for work materials properly | | | | | | |
| Takes care of personal belongings | | | | | | |
| Works independently | | | | | | |
| ATTITUDES | | | | | | |
| Is courteous | | | | | | |
| Shows growth in self-control | | | | | | |
| Works and plays well with others | | | | | | |
| Respects authority | | | | | | |
| Respects property | | | | | | |
| HEALTH AND SAFETY | | | | | | |
| Practices good health habits | | | | | | |
| Observes safety rules | | | | | | |
| CONDUCT | | | | | | |

### PRINCIPAL'S SIGNATURE

1. _____  4. _____
2. _____  5. _____
3. _____  6. _____

### REPORT OF ATTENDANCE

Regular attendance and promptness are essential to good progress in school. If a student is absent, a written statement giving the reason should be sent with the student upon his return to school.

| | | | | | | |
|---|---|---|---|---|---|---|
| Days Absent | | | | | | |
| Times Late | | | | | | |

(reverse side)

428

# IBERIA PARISH SCHOOL ENROLLMENT
(To be turned in before First Monthly Report)

FORM IBERIA 2—B

19 _____ 19 _____ SESSION

GRADE _____

SCHOOL _____

| CHILD'S NAME | | | BIRTH-DATE Year-Mo.-Day | FATHER'S NAME | | | MOTHER'S NAME | | BIRTH CERT. NO. |
|---|---|---|---|---|---|---|---|---|---|
| Last | First | Middle | | First | Middle | | First | Maiden | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

NOTE: ARRANGE NAMES IN ALPHABETICAL ORDER BY GRADES: **NOT** BY CLASSES

Iberia Form — C
Revised 1963

Date- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## REQUEST FOR ORIGINAL ADMISSION TO
## THE IBERIA PARISH PUBLIC SCHOOLS

1. Name of Pupil- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
   Last          First          Middle

2. Current Grade - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - Age - - - - - - - - - - - -
   (If this blank is prepared during summer, write in grade for following year)

3. School last attended - - - - - - - - - - - - - - - - - - - - -Date last attended- - - - - - - - - - - -
   School     City     State

4. With whom does
   pupil live? - - - - - - - - - - - - - - - Address - - - - - - - - - - - - - - - - Home Phone - - - - - - - - - - - -

5. Father - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -Address - - - - - - - - - - - - - - - - - - - - - - -

   Occupation - - - - - - - - - - - - - - - - - - - - - - - - - - - - - Business Phone - - - - - - - - - - - -

6. Mother - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -Address - - - - - - - - - - - - - - - - - - - - - - -

   Occupation - - - - - - - - - - - - - - - - - - - - - - - - - - - - - Business Phone - - - - - - - - - - - -

7. Legal Guardian - - - - - - - - - - - - - - - - - - - - - - - - -Address - - - - - - - - - - - - - - - - - - - - - - -

   Occupation - - - - - - - - - - - - - - - - - - - - - - - - - - - - -Business Phone - - - - - - - - - - - -

8. Place of Pupil's Birth - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - Sex- - - - - - - - - - - - -
   City        Parish        State

9. Birthdate of Pupil - - - - - - - - - - - - - - - - - - - - -Is birth verified by B. C.?- - - - - - - - -
   Month     Day     Year

10. Pupil successfully vaccinated for Smallpox- - - - - -, Whooping Cough- - - - - -,
    Diphtheria- - - - - -, Polio- - - - - -

11. Total number of years in school through current year - - - - - - - - - - - - - - - - - - - -
    (If application is filled during summer state number of years through previous year)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Signature of Parent or Guardian

### *DO NOT WRITE BELOW THIS LINE*

Date
School assignment by Board - - - - - - - - - - - - - - - - - - - - - - - - -Assigned - - - - - - - - - - - -

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -      - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
President School Board                             Superintendent

**430**

Iberia Form D
Revised 1963

Date -------------------------------------------------------

## APPLICATION FOR CHANGE OF PUPIL ASSIGNMENT
## IN IBERIA PARISH PUBLIC SCHOOL ADMINISTRATIVE UNIT
(This blank may not be submitted until pupil is originally assigned.)

This is a request for reassignment because of:

☐ Change of residence (in this case transfer is tentatively made prior to Board confirmation. Blank must be submitted to Visiting Teacher.)

Check one

☐ Reason other than change of residence (in this case transfer is postponed until after Board's approval. Blank must be submitted to Visiting Teacher.)

Name of Pupil ------------------------------------------------------------------
            Last                    First                    Middle

With whom does                                      Home
pupil live? ----------------------Address ------------------ Phone------------

Father's Name ------------------------------------Address ----------------------

Occupation ----------------------------------------Business Phone ----------------

Mother's Name ------------------------------------Address ----------------------

Occupation ------------------------------------------Telephone ----------------------

Legal Guardian ----------------------------------Address ----------------------

Occupation --------------------------------------Telephone ----------------------

Date of pupil's birth ----------------------Is birth verified by B.C.? ------------
                    Month    Day    Year

Pupil successfully vaccinated for smallpox--------, whooping cough---------,
diphtheria--------, polio--------

Place of pupil's birth ------------------------------------------ Sex------------
                        Town (City)        Parish        State

School last attended ------------------------------------- When?------------------
                    School        City        State

Total number of school years completed------------------ Present grade--------
                                                    (Grade for following year if
                                                    filled during summer)

Last school to which child has been assigned by the Board-----------------------

School to which assignment is requested------------------------------------------

Names of all brothers and sisters of this pupil now attending the public schools
of this parish or planning to attend such school during the school year, with
name of school to which they have been assigned:

Name ---------------------------School ---------------------- Grade----------

Name ---------------------------School ---------------------- Grade----------

Name ---------------------------School ---------------------- Grade----------

Name ---------------------------School ---------------------- Grade----------

State specific reasons why pupil should not attend school to which pupil has
been assigned and why pupil should be assigned to school requested (If more
space is necessary, attach additional sheet.)

(front side)

The undersigned hereby certify that to their knowledge the above named pupil does not have any infectious or contagious disease, that no member of the household in which he resides has any infectious or contagious disease, and that, upon request, said pupil will submit to a physical examination by a physician to be approved by the Board of Education to which this application is submitted.

I agree that, upon request, I will furnish to said Board of Education such other information as it may request touching upon this pupil's eligibility and fitness for assignment to the school to which assignment is requested.

------------------------------------------------
Mother

Signature of Applicants   ------------------------------------------------
Father

------------------------------------------------
one standing in loco parentis

Certificate:
Louisiana
-----------------------Parish

I, -----------------------------a----- ----------------of----------------------
Parish, Louisiana, do hereby certify that ------------------and----------------
personally appeared before me this day and, being by me duly sworn, said that he (or she) is the person who signed the foregoing application; that he (or she) is a parent or guardian of the pupil, or person standing in loco parentis to the pupil, for whom this application is made; that affiant is the person authorized by law to make such application; that this application is made in good faith for the reasons stated therein; and that the statements made therein are true to the best of affiant's knowledge and belief.

Witness my hand and --------------------Seal, this --------------------day of --------------------, 19-----.

------------------------------------------------

My Com.exp:
Seal (notary public or of a person
    authorized by laws of La. to
    administer oaths)

---

**WHEN COMPLETED, APPLICATION MUST BE SUBMITTED TO THE VISITING TEACHERS' OFFICE**

---

*DO NOT WRITE BELOW THIS LINE*

Action of Board: -------------------------------------------------------
President School Board

Date: ----------------------------------------------------------------

Date of mailing notice of Board's decision: -----------------------------------

------------------------------------------------
Superintendent

(reversed side)

**432**

Form E

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **1** | Yr. | Mo. | Day | Race | M | F | Bus |
| **2** | Name | | | | . | | |
| | | Last | | First | | Middle | |
| **3** | Address | | | | Phone | | |
| **4** | Father | | | | | | |
| | | Last | | First | | Middle | |
| **5** | Mother | | | | | | |
| | | Last | | First | | Maiden | |
| **6** | Employer | | | | Phone | | |
| **7** | Assigned to: | | | | | | |
| | | | School | | | Signature | |
| **8** | | | | | | | |

(front side)

| First | Middle | Yr. | Mo. | Day | Grade | School |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

(reverse side)

**Dear Parent-:**

Your child _____

is assigned to the _____ grade of the

_____school for the 19_____ school year.

If you have changed residence or have a question, call the Visiting Teachers office, Phone EM 9–3933

Sincerely

**F. F. Wimberly, Supt.**

**Iberia Parish Schools**

Form H

### IBERIA PARISH SCHOOL BOARD
### SPECIAL NOTICE TO PARENTS
### OF SCHOOL AGE CHILDREN

All parents moving into Iberia Parish with children who are to enter public schools on opening day, ——————, are urged to come to the School Board Office at 210 E. St. Peter Street from 8:15 A.M. to 4:00 P.M., Monday through Friday, *with the birth certificates of the children.*

All parents with a child born on or before January 1, 19—, who did not pre-register him for first grade, are urged to bring the birth certificate of the child to the School Board Office for registration and assignment.

All Iberia Parish families that move within the parish and whose children should be transferred to another school are requested to come to the School Board Office to make application for re-assignment.

All families leaving the parish are requested to call 369–3933 and inform the School Board of their departure.