Derek Jerome SINGLETON, Minor, by
Mrs. Edna Marie Singleton, his mother
and next friend, et al., Appellants,

v.

JACKSON MUNICIPAL SEPARATE
SCHOOL DISTRICT et al.,
Appellees.

No. 22527.

United States Court of Appeals
Fifth Circuit.

June 22, 1965.

Jack H. Young, Jackson, Miss., Jack
Greenberg, Derrick A. Bell, Jr., New
York City, for appellants.

E. W. Stennett, Robert C. Cannada,
Thomas H. Watkins, Joe T. Patterson,
Atty. Gen. of Mississippi, Jackson, Miss.,
for appellees.

Before HUTCHESON, BROWN and
WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

The time has come for footdragging
public school boards to move with celerity
toward desegregation.[1]   Since May 17,
1954, public school boards throughout the
country have known that they must de-

---

1. Appellants are Negroes who in March
1963 filed suit on behalf of their chil-
dren seeking injunctive relief requiring
the Jackson Municipal Separate School
District to desegregate the public schools
of Jackson, Mississippi.  The district
court dismissed the complaint on the no-
tion that the Negro students had failed to
utilize or exhaust available administra-

tive remedies relating to the assignment
of pupils to schools.  We reversed with
directions that the plaintiffs' motion for
injunctive relief be speedily heard and
decided.   Evers v.  Jackson Municipal
Separate School District, 5 Cir. 1964,
328 F.2d 408.

On remand, the district court, March
4, 1964, ordered the Board to file a de-

segregate their schools.[2] And as the law moved with rising tempo to meet changing conditions, school boards might have foreseen that further delays would pile up rather than spread their nettlesome problems. This Court has urged school authorities to grasp the nettle now. We have put them on notice that, "The rule has become: the later the start, the shorter the time allowed for transition." [3]

The leavening principle that schools shall be desegregated with "all deliberate speed" was not based on the degree of community hostility to the change: "the vitality of these constitutional principles", the Supreme Court remarked in Brown, "cannot be allowed to yield simply because of disagreement with them".[4]

It was based on the administrative problems in making the transition from a segregated to an integrated system.[5] A slow-down now willl only multiply a school board's administrative difficulties.

The United States Office of Education, Department of Health, Education and Welfare, has fixed minimum standards to be used in determining the qualifications for schools applying for federal financial aid.[6] "The fall of 1967 is set as the target date for the extension of desegregation to all grades of school systems not fully desegregated in 1965–1966 as a qualification for Federal financial assistance" ; [7] a good faith start requires designation of at least four grades for the 1965–1966 school year.[8]

segregation plan by July 15, 1964, which would desegregate at least one grade by September 1964. At the trial in April 1964 the Board and white parents who had intervened offered voluminous testimony to support their contention that racial differences justified continued school segregation. The Court made final its March 4, 1964, order. The Board and the intervenors appealed. That appeal is now pending.

July 15, 1964, the Board filed a grade-a-year segregation plan offering "freedom of choice" type assignments to pupils entering the first grade in September 1964. After a hearing July 29, the district court "tentatively approved" the plan and recessed the hearing until February 1965. The court below again approved the Board's plan as submitted. The appellants appealed.

On the Attorney General's certification that "this case is of general public importance", raising questions "which are bound to affect the resolution of desegregation controversies elsewhere in the State and throughout the South", the court granted leave to the United States to intervene.

2. Brown v. Board of Education, 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873.

3. Lockett v. Board of Education of Muskogee County School District, Georgia, 5 Cir. 1965, 342 F.2d 225.

4. Brown v. Board of Education of Topeka, 1954, 349 U.S. 294, 299, 300, 75 S.Ct. 753, 756, 99 L.Ed. 1083. (The second Brown opinion.)

5. These "problems relat[e] to administration, arising from the physical condition of the school plant, the school transportation system, personnel, revision of school districts and attendance areas into compact units to achieve a system of determining admission to the public schools on a nonracial basis, and revision of local laws and regulations which may be necessary in solving the foregoing problems". Brown v. Board of Education of Topeka, 1954, 349 U.S. 294, 299, 75 S.Ct. 753, 756, 99 L.Ed. 1083. In retrospect, the second Brown opinion clearly imposes on public school authorities the duty to provide an integrated school system. Judge Parker's well-known dictum ("The Constitution, in other words, does not require integration. It merely forbids discrimination".) in Briggs v. Elliott, E.D.S.C. 1955, 132 F.Supp. 776, 777, should be laid to rest. It is inconsistent with Brown and the later development of decisional and statutory law in the area of civil rights. This Court has come a long way from Avery v. Wichita Falls Ind. School District, 5 Cir. 1957, 241 F.2d 230, 233, cert. den'd, 353 U.S. 938, 77 S.Ct. 816, 1 L.Ed. 2d 761 (1957) and Holland v. Board of Public Instruction, 5 Cir. 1958, 258 F.2d 730. Lockett (see footnote 3) traces the course this Circuit has taken in school segregation cases.

6. General Statement of Policies Under Title VI of the Civil Rights Act of 1964 Respecting Desegregation of Elementary and Secondary School, United States Office of Education, Department of Health, Education, and Welfare, April 1965.

7. Id.

8. Id.

We attach great weight to the standards established by the Office of Education. The judiciary has of course functions and duties distinct from those of the executive department, but in carrying out a national policy the three departments of government are united by a common objective. There should be a close correlation, therefore, between the judiciary's standards in enforcing the national policy requiring desegregation of public schools and the executive department's standards in administering this policy. Absent legal questions, the United States Office of Education is better qualified than the courts and is the more appropriate federal body to weigh administrative difficulties inherent in school desegregation plans. If in some district courts judicial guides for approval of a school desegregation plan are more acceptable to the community or substantially less burdensome than H.E.W. guides, school boards may turn to the federal courts as a means of circumventing the H.E.W. requirements for financial aid. Instead of a uniform policy relatively easy to administer, both the courts and the Office of Education would have to struggle with individual school systems on ad hoc basis. If judicial standards are lower than H.E.W. standards, recalcitrant school boards in effect will receive a premium for recalcitrance; the more the intransigence, the bigger the bonus.

In view of the need for immediate relief if Negro children in Jackson are to receive the benefit of the Office of Education's 1967 target date for total public school desegregation, the appellant's motion for injunctive relief pending appeal is granted with directions that the district court order the appellee School District to submit promptly a plan of desegregation extending to at least four grades for the year 1965–1966. In redrawing the plan the appellee should bear in mind that decisions of this Court have directed that desegregation of public schools should extend concurrently from the lower grades up and from the higher grades down.[9] As to details of the plan, the Board should be guided by the standards and policies announced by the United States Office of Education in establishing standards for compliance with the requirement of Title VI of the Civil Rights Act of 1964.

If Selma, Alabama, can commence with desegregation of four grades for 1965–1966, Jackson, Mississippi, can at least catch up.[10] And indeed in all but the most exceptional cases, all school districts commencing desegregation in fall 1965 should be expected to do as well.

The mandate shall be issued forthwith.

---

9. This "afford[s] those students already in school some measure of desegregated education before graduation". Lockett v. Board of Education of Muskogee County School District, Georgia, 5 Cir. 1965, 342 F.2d 225, 228.

10. The Birmingham News, May 17, 1965, page 1; The New Orleans Times-Picayune, May 17, 1965, page 1.