Alfreda TRAHAN et al.

v.

LAFAYETTE PARISH SCHOOL
BOARD et al.

Marilyn Marie MONTEILH et al.

v.

ST. LANDRY PARISH SCHOOL
BOARD et al.

Joan GRAHAM et al.

v.

EVANGELINE PARISH SCHOOL
BOARD et al.

Catherine BATTISE et al.

v.

ACADIA PARISH SCHOOL
BOARD et al.

Civ. A. Nos. 10903, 10912, 11053, 11125.

United States District Court
W. D. Louisiana,
Lafayette and Opelousas Divisions.

Aug. 13, 1965.

Final Ruling on Motions Aug. 23, 1965.

No. 10,903:

A. P. Tureaud, A. M. Trudeau, Jr., and Ernest N. Morial, New Orleans, La., Jack Greenberg and Norman Amaker, New York City, Jesse N. Stone, Jr., Shreveport, La., for plaintiffs.

Bertrand DeBlanc, Dist. Atty., Lafayette Parish, Lafayette, La., for defendants.

No. 10,912:

A. P. Tureaud, A. M. Trudeau, Jr., Ernest N. Morial, New Orleans, La., Marion Overton White, Opelousas, La., Jack Greenberg and Norman Amaker, New York City, Jesse N. Stone, Jr., Shreveport, La., for plaintiffs.

J. Y. Fontenot, Dist. Atty., St. Landry Parish, Opelousas, La., for defendants.

No. 11,125:

A. P. Tureaud, A. M. Trudeau, Jr., New Orleans, La., Marion White, Opelousas, La., Jack Greenberg and Norman Amaker, New York City, for plaintiffs.

Nolan J. Edwards, Asst. Dist. Atty., Acadia Parish, Crowley, La., for defendants.

No. 11,053:

A. P. Tureaud, A. M. Trudeau, Jr., Ernest N. Morial, New Orleans, La., Jack Greenberg and Norman Amaker, New York City, for plaintiffs.

L. O. Fuselier, Dist. Atty., 13th Judicial Dist., and J. Wm. Pucheu, Asst. Dist. Atty., 13th Judicial Dist., Ville Platte, La., for defendants.

PUTNAM, District Judge.

On August 11, 1965 we heard motions to accelerate the school desegregation plans filed by defendant Boards in the above-captioned cases to include at least four grades for the opening of school in the fall of 1965 and to set 1967 as the date for completing the process. The motions were the result of the decision of the Fifth Circuit Court of Appeals in Singleton v. Jackson Municipal Separate School District, 348 F.2d 729 decided June 22, 1965.

In Singleton, supra, the Court indicated that the minimum requirements set out in the General Statement of Policies, fixed by the Office of Education, Department of Health, Education and Welfare, in April, 1965, would be applied by the Courts in formulating or approving plans submitted by individual boards not voluntarily complying with Title VI of the Civil Rights Act of 1964. This decision demands that four grades be included in the plan for the fall term of 1965, and sets the completion date as the fall term, 1967.

After Singleton, supra, another panel of the Court in Price et al. v. Denison Ind. School District et al., 348 F.2d 1010, decided July 2, 1965, held that the voluntary plan adopted by the defendants in that case in 1963 calling for one grade a year with completion of the desegregation process in 1975 should be accelerated to meet HEW policies of four grades in 1965, but left open the question posed as to completion date, stating that it should be either fall 1967, or fall 1968 as set in previous decisions of the Court.

Plans filed by the defendants in each of the four cases considered by the author of this opinion were confected with the standards previously set by the Court on February 24, 1965, in Lockett et al. v. Board of Education of Muscogee County School Dist., Georgia et al., 5 Cir., 342 F.2d 225, which reviewed the jurisprudence up to that time and fixed, to the great relief of District Courts, the judicial formula to be followed as (1) the process of desegregation must commence in the fall of 1965 and work from both ends, first grade and last grade, (2) all grades must be desegregated by the fall term of 1968.

The basic plan in each case is patterned upon the procedures approved by this Court through the Honorable Edwin F. Hunter, Jr., in the Lake Charles Division, for the Parish of Calcasieu and the City of Lake Charles. Thereafter, following Lockett standards as minimum requirements and leaving the number of grades to be included the first year to the discretion of the defendant boards, who, in our judgment, are better equipped to evaluate their respective administrative and school facilities than is the Court, or, with all due respect, HEW, uniform criteria have been established throughout the Western District of Louisiana, and plans approved by the Court having a target date for completion the fall term of 1968, with the following grades being desegregated in the fall of 1965, viz.:

Acadia Parish, the first and twelfth;

Calcasieu Parish, the first and twelfth;

Evangeline Parish, the first and twelfth;

Jackson Parish, with four grades, including the first and twelfth;

Jefferson Davis Parish, the first and twelfth;

Lafayette Parish, the first, fifth and twelfth;

Caddo Parish, the first and twelfth;

St. Landry Parish, the first and twelfth;

Natchitoches Parish, the first and twelfth;

Rapides Parish, the first and twelfth;

Iberia Parish, all grades, the first through the twelfth;

Bossier Parish, first and twelfth.

The record in each of the foregoing cases will reflect that the Court and counsel for the litigants met in informal pretrial conferences, in some instances with the School Boards involved being present, *prior to the decision in Singleton, supra*. As to the four cases here under review on plaintiffs' motion to accelerate, the Court can state that after these meetings all parties were in agreement, and the date of issuance of the injunction, filing of the plans, and formal approval thereof were merely left open for the convenience of Court and counsel.

In the view of the author of this opinion, commitments made at pretrial conferences and agreed to by the Court under such circumstances present compelling legal reasons why the rule of Singleton, supra, adopting HEW standards in Jackson, Mississippi, should not be applied here at this late date, with less than three weeks remaining before the opening of school.

Moreover, in view of Price, supra, it seems clear to the writer that the rule of Lockett, supra, and its forerunners, has not been totally emasculated. In other words, in my opinion Singleton does not stand for the proposition that in all instances the policy of HEW is to be substituted for the judgment of the Court, but rather that the program of that administrative agency furnishes basic guidelines fashioned by educators familiar with the problems of operating public school systems, to which the Court may and should look in fashioning relief for petitioners in cases where voluntary compliance with the Civil Rights Act to obtain federal funds is not forthcoming.

The Act itself, Title IV, Desegregation of Public Education, in Section 407(a), with reference to suits instituted by the Attorney General, specifically states that nothing contained in that title shall be construed as enlarging the existing power of any Court to insure compliance with constitutional standards. Section 409 preserves the right of individual citizens to "sue for or obtain relief" against discrimination in public education. This section obviously preserves the remedies developed by the jurisprudence since 1954, without embellishment. More specific provisions would have been most welcome, and would have eased the burden of the courts in these cases immeasurably. The fact remains that Congress did not enact them; instead, it expressly recognized the discretionary function of the judiciary in meeting the exigencies of individual situations.

The policy statement issued by the Office of Education under Title VI of the Act, referred to in Singleton, itself provides that any court-approved plan of desegregation will be considered a compliance with the Act for the purpose of rendering the school board affected eligible for financial aid. As a matter of fact, the plan instituted by the Court in Calcasieu Parish, upon which all other plans in the Western District of Louisiana are uniformly based, has received the approval of HEW as meeting the requirements of the Act and the policies of the Department.

Finally, Title VI, Section 603, provides for judicial review of any action taken by any administrative agency granting or withholding funds, either in the manner provided by law for review of agency action on other grounds, or under section 10 of the Administrative Procedure Act. It is expressly stated that "such action shall not be deemed committed to unreviewable agency discretion within the meaning of that section".

Judge Wisdom, author of the opinion in the Singleton case, recognized that the rule therein laid down for the Jackson School District was not completely inflexible when he stated:

"We attach great weight to the standards established by the Office of Education. *The judiciary has, of course, functions and duties distinct from those of the executive department*, but in carrying out a national policy we have the same objective. * * * *Absent legal questions*, the United States Office of Education is better qualified than the courts and is the more appropriate federal body to weigh administrative difficulties inherent in school desegregation plans." (Emphasis supplied)

█ This is necessarily so, as an unqualified assertion that the policies announced by HEW must be followed in every instance would violate the letter of the law itself and amount to a judicial determination that all agency action based thereon would be approved on review regardless of other pertinent circumstances. Thus, the system of "checks and balances" expressly set up in Section 603 of the Act, supra, would be effectively read out of the statute.

The power of the Court to adopt the present plan or to modify it, is not in dispute. Since Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L. Ed. 873 (1954), this power has been recognized, and, in eleven years since that decision, the duty of federal courts to act has been made clear. The doctrine has been clarified, enlarged, and carefully delineated from every conceivable angle during that period.

In all of the decisions, including Brown, the good faith, conscientious performance of duty by local officials charged with administering public schools has been emphasized, and their primary responsibility for conforming to constitutional standards recognized.

No one here disputes the sincerity of purpose of these defendants, nor that they will, in complete good faith, discharge their obligations as defined by our injunctive orders heretofore entered in these cases.

In my opinion, there is a corresponding obligation resting upon Court and counsel to keep faith with these officials. A plan of desegregation valid and in keeping with the law as it existed on June 21st, clearly spelled out in Lockett, supra, is none the less valid, in the opinion of this judge, on June 22nd, because another school district in another state and under circumstances far different from the orderly co-operation found in southwestern Louisiana, was ordered to proceed at a faster pace.

Absent other factors, the author of this opinion would deny the present motions. The stability of the judicial process directly affects the stability of the school systems affected. There are thousands of students involved, and variations in procedure from week to week, or even month to month, will impose an almost impossible burden on these defendants. There is no question here of placing a premium

on recalcitrance; the question is whether or not the orders of the Court, predicated upon existing law, are sound. In short, having complied with the mandate of the Court, can defendants place reliance on their actions as being sufficient for 1965–66?

■ There are other factors here, however, which require that such a ruling be withheld, temporarily at least. Appeals have been taken from the judgments and orders entered in the parishes of Bossier and Rapides. These same questions are presented for consideration to the Court of Appeals. They will doubtless soon be resolved and will, of course, control the motions here.

An order has, accordingly, already been entered holding these motions under consideration while awaiting decision of the Court of Appeals in the cases now pending before it. Our final action will, of necessity, be governed by the decisions which we expect to be definitive as to these issues.

The foregoing reasons are filed by this judge individually in the cases affecting the parishes of Acadia, Lafayette, Evangeline and St. Landry only. On such issues affecting the public interest, silence does not serve the judicial process. Advancing the target date for completion of the desegregation process to the fall of 1967–68 would not work hardships on any of the defendants. Inclusion of additional grades at this late hour for fall, 1965, would, as we have said, pose difficult administrative problems. The defendants, however, will know what to expect in the event the views expressed herein are rejected in the cases on appeal.

The Clerk of Court will furnish copies hereof to each of the defendant Boards, through their respective Superintendents, as well as to counsel of record.

## FINAL RULING ON MOTIONS

The United States Court of Appeals for the Fifth Circuit has decided the cases mentioned in our opinion of August 13, 1965, controlling the present motions.[1]

■ The Shreveport and Alexandria Divisions of this Court have, on Thursday, August 19, 1965, implemented the desegregation plans in the parishes of Bossier and Rapides, Civil Numbers 10,687 and 10,946, respectively, of the docket of this court, in which said appeals were taken. Additional orders were issued in all other cases pending in the Western District of Louisiana affected by motions identical to those under consideration, directing inclusion of the second and eleventh grades in the plans previously approved, effective at the commencement of school for the 1965–66 school year.

Following this mandate, we now rule that the plans filed by defendants in Civil Docket No. 11,125 for Acadia Parish, and No. 10,903 for Lafayette Parish, in the Lafayette Division, and in No. 11,053 for Evangeline Parish and No. 10,912 for St. Landry Parish, in the Opelousas Division, must be amended to include at least four grades this fall in order to comply with the Singleton and Price cases which we have fully discussed in the memorandum opinion of August 13th.

■ This decision is predicated upon the conclusion of the Court that the juris-

1. Valley et al. v. Rapides Parish School Board et al., 5 Cir., 349 F.2d 1022, and United States v. Bossier Parish School Board et al., 5 Cir., 349 F.2d 1020, both decided August 17, 1965. The orders are in identical words and read: "BY THE COURT: It is ordered that the motion of the United States for leave to intervene as an appellant in this cause is hereby granted. The judgment of the district court is vacated and the cause is remanded to the district court for further consideration in the light of Singleton v. Jackson Municipal Separate School District et al., 348 F.2d 729, decided by this Court on June 22, 1965, and Price v. Denison Independent School District Board of Education, 348 F.2d 1010, decided by this Court on July 2, 1965.

This disposition made by this order renders unnecessary the consideration of other matters submitted to this Court by motions."

prudential rule evolved in this Circuit since 1954, culminating in Lockett et al. v. Board of Education of Muscogee County, 342 F.2d 225 (5 Cir. 1965), has been modified by the Singleton and Price cases to the extent that the minimum requirements for desegregation of public school systems under court approved plans becoming effective in the fall of 1965, are now that (1) four grades, starting at both ends of the scale, must be included initially, and (2) the completion date for inclusion of all grades in the plan should be fall 1967, unless there are compelling reasons to extend it to 1968.

All defendants in the present cases were promptly informed of the orders of the Court of Appeals in the Bossier and Rapides cases, supra, note 1. They have been offered an opportunity to make a showing why the requirements listed above cannot be met at a hearing fixed this date.

In conference held in chambers prior to the hearing, each school board offered suggested procedures to effect compliance. It is noted that schools are scheduled to open in Acadia Parish August 30th, in Evangeline Parish on September 7th, in Lafayette Parish on August 31st and in St. Landry on August 30th. While strenuous objections might have been expected because of the short time remaining, the confidence which the Court has previously expressed as to the good faith of the boards and the conscientious desire of these public officials to discharge their duties under the law has been fully justified. As in the past, the Court will give full recognition to their recommendations in the orders entered this date.

The Court expresses gratitude to the able attorneys representing all parties, for their mutual understanding and assistance in solving the problem arising from this last minute change of procedure.

■ This Court defers action on the request to advance completion date to fall, 1967. It is directed, however, that a written report be filed in each case on or before February 1, 1966, as to the feasibility of accelerating the target date for inclusion of all grades in the system on a desegregated basis. This will permit an intelligent assessment of the position of each board in the light of its peculiar local problems, and will allow ample time for decision before school opens in the fall of 1966. No possible prejudice can result from this approach.

In making this evaluation, the boards should consider the policies of the Office of Education, Department of Health, Education and Welfare, as useful guidelines for accomplishing complete desegregation.

Distinctly separated from the question of desegregation and the operation of racially nondiscriminatory public school systems under Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), however, is the question of the binding effect of HEW regulations and policies upon the courts in deciding matters at issue in private suits brought to secure the rights recognized in Brown, supra.

As previously pointed out, this Court does not interpret Singleton and Price to require blind adherence to such regulations and policies in these cases. Any such interpretation would not only be destructive of the principle of separation of the powers of the government into the executive, legislative and judicial branches, but would depart completely from the Congressional intent as expressed in the Act itself, Sections 407(a) and 409, Title IV, Section 603, Title VI (42 U.S.C.A. §§ 2000c–6, 2000c–8 and 2000d–2).

■ Accordingly, after full consideration of these decisions, we hold that the discretion vested in the Court in fashioning and enforcing relief in school desegregation cases in accordance with the facts and circumstances found to exist in each case, is not affected by HEW policies and regulations under Title VI of the Act, except to the extent that they should be considered in balancing the

equities along with all other factors involved, and accorded the respect given to such regulations and policies under well-established principles of administrative law.

Appropriate orders will be entered accordingly.