Dorothy Marie **THOMAS** et al.

v.

**ST. MARTIN PARISH SCHOOL BOARD** et al.

Civ. A. No. 11314.

United States District Court
W. D. Louisiana,
Lafayette Division.

Sept. 2, 1965.

A. P. Tureaud, New Orleans, La., for plaintiffs.

Knowles M. Tucker, Dist. Atty., 16th Judicial Dist. of Louisiana, New Iberia, La., for defendants.

PUTNAM, District Judge.

### Memorandum Opinion

The class action instituted by plaintiffs seeks to obtain desegregation of the public school system in the parish of St. Martin, Louisiana. The suit was filed on August 17, 1965. School registration in St. Martin Parish commenced on August 27, 1965, and at the time this memorandum is written the pupils enrolled in this system are attending classes.

Eight days after the filing of this suit, twelve days before the delays allowed by law for answering had elapsed, the attorneys representing defendants requested the Court to hold a pretrial conference at the earliest practicable date in view of the swift approach of the school term, the anticipated ruling of this Court in the light of our earlier decisions, and the jurisprudence prevailing in this area of the law, particularly as summarized in the recent decisions of the United States Court of Appeals for the Fifth Circuit in the cases of Lockett et al. v. Board of Education, Muscogee County School District, Georgia, et al., 342 F.2d 225 (February 24, 1965), Singleton et al. v. Jackson Municipal School District, etc., et al., 348 F.2d 729, decided June 22, 1965, Price et al. v. Denison Independent School District et al., 348 F.2d 1010, decided July 2, 1965, United States v. Bossier Parish School Board et al., 349 F.2d 1020 decided August 17, 1965, Valley et al., United States of America Intervenor, v. Rapides Parish School Board et al., 349 F.2d 1022, decided August 17, 1965, none of which have yet been reported.

A conference was held between Court and counsel attended by the President of the defendant School Board and the Su-

perintendent of schools for St. Martin Parish. After full discussion of all issues by counsel stipulations were reached which have been filed in the record, and on September 2nd, 1965, defendants filed additional pleadings to which is attached a proposed plan of pupil assignment adopted by the Board at its meeting held on August 31, 1965, which provides, among other things, for the abolition of all previously existing school zones and the adoption of a nondiscriminatory system of pupil assignment in the parish of St. Martin. As part of the pretrial stipulations it was agreed by all parties that this plan as now officially adopted and filed is acceptable as an alternative to the denial made in the answer and the primary prayer of defendants that plaintiffs' suit be denied and dismissed. The entire matter is submitted for decision on the face of the record.

■ On the basis of this record the Court finds that the defendant School Board has in the past maintained a biracial school system, that the plaintiffs and other members of their class have been affected by this system, and that they are entitled to the relief prayed for. There is, of course, only one answer under the law to such a situation: recognition of the constitutional rights of plaintiffs and all other members of their class by the desegregation of the St. Martin Parish public schools. There remains only the question of the method by which this shall be accomplished.

There is no doubt that the defendant officials in this case have approached the solution of this problem with the greatest concern for the welfare of all of the children involved in the operation of their school system, and with a good faith, conscientious desire to perform their duties in accordance with the law as enunciated in the legion of cases decided by the courts of the United States since the landmark decision of Brown v. Board of

Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). The plan advanced by them is similar to the transfer and assignment system adopted in Iberia Parish, commented upon in our decision in the case of Henderson et al. v. Iberia Parish School Board, Civil Docket Western District of Louisiana, 245 F.Supp. 419, decided June 23, 1965. It calls for an immediate desegregation of *all* grades, based upon the proposition that request for transfers from one school to another may be made at any time during the school year. The Court was assured at the pretrial conference held therein that as to pupils registered for the fall of 1965, all of those who expressed a preference for assignment to a different school were advised that their applications could be made and would be held by the Board pending decision of this case, so that, for all intents and purposes, the plan is retroactive to the opening of school, 1965.

We emphasize that this case is one brought by private litigants under the jurisprudential rule to which we have made full and detailed reference in memorandum opinions rendered August 13th. supplemented August 23rd, in four consolidated cases in which motions had been filed by plaintiffs to accelerate the desegregation plans in the parishes of Lafayette, Evangeline, St. Landry and Acadia,[1] in which it was argued that the decision of the Court of Appeals in Singleton, supra, required application of the standards set by the Office of Education, United States Department of Health, Education and Welfare, in all school desegregation matters. At that time this Court said:

"The basic plan in each case is patterned upon the procedures approved by this Court through the Honorable Edwin F. Hunter, Jr., in the Lake Charles Division, for the parish of Calcasieu and the City of Lake Charles. Thereafter, following Lock-

---

1. Consolidated hearing on motions in: No. 11125, Battise et al. v. Acadia Parish School Board et al.; No. 10903, Trahan et al. v. Lafayette Parish School Board et al.; No. 10912, Monteilh et al. v. St.

Landry Parish School Board et al.; No. 11053, Graham et al. v. Evangeline Parish School Board et al., D.C., 244 F.Supp. 583.

ett standards as minimum requirements and *leaving the number of grades to be included the first year to the discretion of the defendant boards, who, in our judgment, are better equipped to evaluate their respective administrative and school facilities than is the Court, or, with all due respect, HEW,* uniform criteria have been established throughout the Western District of Louisiana. * * *" (Emphasis supplied.)

In the supplemental opinion we recognized that under the plain mandate of the Court of Appeals in the Bossier and Rapides Parish cases, supra, the rule of Lockett had been modified so that the minimum standards now required by our jurisprudence, as distinguished from HEW policies, demands desegregation of at least four grades for the fall term of 1965.

The wisdom of leaving the number of grades to be included in the plan to the discretion of the local School Board involved in each individual suit is, in the opinion of this Court, fully demonstrated by the action taken by defendants in the case now under consideration.

The injunction issued this day relieves the School Board of the burden of making a voluntary decision to desegregate the school system falling under its jurisdiction. They are now bound by this order and their duties are formally defined.[2] We have no doubt that these officials will conscientiously carry out their obligations, and that they will implement this plan to the best of their ability, consistent with local problems of an administrative nature. They have not shirked their responsibility, they have accepted it and they have gone far beyond the minimum requirements as established by the case law. Until it be demonstrated otherwise, the court considers that defendants will meet the obligations imposed upon them by virtue of their official status and our decree, and that freedom to choose the school to be attended by all pupils will be respected, weighed and judged in accordance with the criteria established, *on a racially nondiscriminatory basis.*

By way of vitalizing the jaundiced complexion of legal opinions in this field, the Court now takes judicial cognizance of the fact that St. Martin Parish is generally regarded as one of the centers of Acadian culture in the State of Louisiana. The parish seat, St. Martinville, is the site of the famed Evangeline Oak, in the shade of which is reputed to lie the grave of the heroine of Longfellow's poem, "Evangeline".[3] The popula-

2. Some concern has been expressed by officials of HEW in recent news releases over the fact that there have been no voluntary compliances under the Civil Rights Act of 1964 initiated by Louisiana Boards. The Times-Picayune, Monday, Aug. 23, 1965, "La. Only State Without Voluntary Mix Progress". We point out that injunctive relief of the sort here granted places such defendants in jeopardy of sanctions far heavier than the withholding of financial aid by the Commissioner and that the duty of the Courts of Louisiana to maintain the integrity of the nation's legal system, although not one to be enjoyed, leaves no alternative, in the event of violations of the injunctive process, but to impose such sanctions. There should be no doubt of this in the minds of any persons within the scope of the Decree entered this day. The Court recognizes the impropriety of injecting newspaper articles into the area of judicial determination of issues before the court, and does not attribute the status of legal authority to such articles. Since the inference that some might draw from the article mentioned, however, directly affects the courts, we feel this reference to be justified.

3. Digressing further, we note that in a campaign speech for Governor of Louisiana the late Huey P. Long, said: "And it is here under this oak where Evangeline waited for her lover, Gabriel, who never came. This oak is an immortal spot, made so by Longfellow's poem, but Evangeline is not the only one who has waited here in disappointment.

Where are the schools that you have waited for your children to have, that have never come? * * * Evangeline wept bitter tears in her disappointment, but it lasted through only one lifetime. Your tears in this country, around this oak, have lasted for generations.

tion is predominantly of French descent and the people of St. Martin Parish as well as other parishes in Southwestern Louisiana are indelibly imprinted with a double heritage and tradition of individual freedom: the vicious persecution visited upon their ancestors in Nova Scotia, and their adoption of this land, where the rule of law demands recognition of each individual's claim to basic human dignity. It is in this background that the results achieved in this case, and in other cases mentioned above in this opinion in the Lafayette and Opelousas Divisions,[4] have been brought about by men of good will representing both races. The lasting solution of the complexities involved in the social problem of school desegregation must, of necessity, be met in this fashion, with mutual understanding and restraint.

Only the passage of time and the empirical knowledge following application of the desegregation process in the context of this history, will prove whether or not our assessment of these fundamental considerations is correct. The Court expresses confidence that the people will respond with the characteristic good sense and tolerance that has set this area apart from other sections of the nation.

The Court expresses gratitude to the attorneys representing plaintiffs and the attorneys representing defendants, as well as the school officials and others involved in this particular case, for the assistance and co-operation given to the Court at the pretrial conference and later actions taken by the parties.

## DECREE

For written reasons this day assigned, it being stipulated that plaintiffs are members of the Negro race and residents of the parish of St. Martin, Louisiana, and this being a class action affecting all members of the class to which plaintiffs belong who are similarly situated, so numerous as to make it impracticable to bring them all before the Court, and the right sought to be enforced is common to all members of such class, it is now:

I. Ordered, adjudged and decreed that the defendants, St. Martin Parish School Board and L. H. Boulet, Superintendent, together with all other agents, representatives, servants and employees of said School Board, their successors in office and those acting in concert with them who shall receive notice of this Order, be and they are hereby permanently restrained and enjoined from:

(a) Continuing to operate a biracial public school system in said parish and the public schools thereof now and hereafter falling within their jurisdiction and under their supervision, and

(b) from assigning, continuing to assign or commencing to assign pupils to said public schools solely because of the race of any or all of such pupils, and

(c) from continuing to maintain dual attendance zones in furtherance of a biracial public school system.

II. It is further ordered, adjudged and decreed that the proposed plan of desegregation of the St. Martin Parish School system, adopted on Sept. 1, 1965, and filed by defendants on Sept. 2, 1965, approved by all parties as stipulated on August 27, 1965, effective fall term 1965–66, applying to grades one through twelve and providing details for the future operation of the St. Martin Parish public school system without regard to race or color, be and the same

---

* * *" "Every Man a King", Huey P. Long, National Book Co., Inc., 1933, p. 99. See also, "The True Story of the Acadians", Dudley J. LeBlanc, 1932, p. 64, where it is said: "In the Maryland Group was Emmeline Labiche, believed by some to be the Evangeline of Longfellow's poem. She had been engaged in Nova Scotia to Louis Arceneaux, and had witnessed the soldiers brutally carrying him away from her at the time of the deportation in 1755. Though she did not find her lover among these acquaintances, she continued her relentless search, and felt confident of meeting him somewhere in Louisiana, since so many Acadians had settled there."

4. Supra, note 1.

is hereby approved and made the Order of this Court as fully as if incorporated herein *in extenso*.

For greater certainty the Clerk is ordered to mark said exhibit "Decree, Paragraph II" for identification herewith.

III. It is further ordered, adjudged and decreed that said defendants be and they are hereby directed and enjoined to publish notice and conduct all registrations, and transfers of pupils enrolled and to be enrolled in said school system, in accordance with the procedures and criteria set forth in said plan; provided, however, that said defendants may, in the exercise of their sound discretion, adopt additional reasonable and necessary regulations to implement and further the objectives expressed in such plan and this decree, not inconsistent with or violative of, the injunctive relief granted in paragraph I above.

IV. It is further ordered, adjudged and decreed, that plaintiffs' request for desegregation of teaching personnel and other administrative staff in said school system, in addition to the remaining portions of the prayer of the complaint herein filed, are deferred and action thereon at this time is denied, pending the progress of the pupil desegregation of said system; all subject to the future orders of the Court.

V. Jurisdiction is retained in this case for such further proceedings as may become necessary and proper.

## RESOLUTION

Be it resolved by the St. Martin Parish School Board that it does hereby ratify and affirm the action of its Superintendent, Mr. Lloyd P. Boulet, in providing that all original registrants at the public schools, who registered on the 26th of August, 1965, or thereafter, be allowed to express a preference of the school they wish to attend, and he is directed to act on all said registrations in accordance with the policies this day adopted in resolution adopted pursuant to orders of the United States District Court in Case No. 11,314.

\* \* \* \* \* \*

The undersigned hereby certifies that the above and foregoing is a true and correct copy of a resolution unanimously adopted by the St. Martin Parish School Board at a Special Meeting thereof duly called, held and convened on August 31, 1965, whereat a proper quorum thereof was present throughout, and the same has not since been rescinded, set aside or revoked.

St. Martinville, Louisiana, this 1 day of September, 1965.

Lee Boulet
_____
L. H. Boulet, Superintendent
St. Martin Parish Schools

## RESOLUTION

Whereas the St. Martin Parish School Board has been ordered to adopt and file a plan for integration of its school system, in compliance with a preliminary hearing of the United States District Court for the Western District of Louisiana dated the 27th day of August 1965, and;

Whereas, the St. Martin Parish School Board has previously operated its schools and made pupil assignments by zone and districts, and;

Whereas, the order of this Honorable Court requires certain drastic and basic changes in the assignment policy and procedures of the St. Martin Parish School Board, and;

Whereas, the State Board of Education has not promulgated rules and regulations relative to placement of pupils in the schools, and this Board has inherent power of pupil placement within the legal limit, and;

Whereas, the St. Martin Parish School Board considers that any general or arbitrary reallocation of pupils heretofore entered in the public school system as presently operated, in accordance with any rigid rule of proximity, personal preference or other criteria not within the control of the School Board, would impose excessively onerous burdens on

the available facilities and personnel of the St. Martin School system, and;

Whereas, the School Board of St. Martin Parish believes that it can operate its school system efficiently, progressively, and without discrimination under the hereinafter detailed assignment system:

Now, therefore, in order to insure the continued orderly, efficient and progressive operation of the school system of this Parish, as established, and to comply with the preliminary hearing orders of the United States District Court dated the 27th day of August, 1965, the St. Martin Parish School Board does hereby adopt the following policy and procedures to govern all future assignments and transfers of pupils within the school system and under the jurisdiction of this Board:

I. All school attendance zones and districts previously existing are hereby abolished.

II. All initial pupil assignment as presently existing will be deemed adequate, subject, however, to the following provisions:

    A. Transfers, commencing as of the day of adoption of this resolution, and original assignments, except those already made for the school year 1965–66, will be made under the hereinafter listed criteria, which make no distinction on account of race, color or creed.

    B. Application forms approved by the Superintendent and the Board will be made available by the School Board upon request to the parent or guardian of the student affected, with complete details of procedures to be followed, and the rules and regulations of the School Board will be furnished to any person seeking transfer or original assignment within the school system of St. Martin Parish.

    C. All request for transfer or original assignment shall be made on forms provided for this purpose by the School Board and shall be acted on by the Superintendent within a period of fifteen (15) days from receipt by him, unless, because of some special circumstance not covered herein, in the judgment of the Superintendent the application should originally be acted on by the Board, in which case it shall be presented to and acted on by the Board at the first regular meeting of the Board after receipt of the application.

D. The School Board will cause to be published in the news media of St. Martin Parish a notice to School age children and their parents at least two (2) times before September 30th of 1965, and thereafter at least three (3) times during the summer vacation months of 1966, a notice advising all persons of the policies of the St. Martin Parish School Board governing pupil assignment and will distribute a notice to all children for delivery to their parents of its new assignment policy when approved by this Court.

E. The Superintendent shall make all assignments without regard to race subject to the following criteria which shall be effective as of the adoption of this resolution and shall remain the governing factor in all requests for original assignment or transfer within this Parish:

1. Class sizes. Classes are to be held as nearly equal in size as possible throughout the system by grade levels and within the limits set by the State Board of Education of Louisiana.

2. Proximity to schools. This includes the proximity of a child's residence to a school, and also the availability of efficient transportation to the school to which the child is assigned.

3. Multiple children in family. Every effort will be made to keep the children of each family together in the same school unless other factors prohibit this, and at the same time attempting to keep members of same family in separate rooms within a school.

4. Parental request. Any parent or guardian at any time of the year has the privilege of making request for transfer of one or more of his children to a specific school or schools, stating reason or reasons for this request. Any parent or guardian requesting original admission of his child or children to school has the privilege of requesting a specific school, giving the reasons for this request. Parental request will be granted as long as other criteria herein set out are met.

5. Special recommendations. Children are assigned to Special Education classes upon the recommendation of psychiatrists, psychologists or medical doctors. Upon the request of a parent or guardian, or upon the recommendation of a teacher or principal, certain tests are administered by the Special Education Department at the University of Southwestern Louisiana or by the Evangeline Area Guidance Center for the special placement due to physical, psychiatric or behavioral factors, recommendations are required and may be accepted from a medical doctor, psychiatrist or psychologist.

III. If any paragraph of these rules and procedures shall be held by any court of competent jurisdiction to be invalid for any reason, the remaining paragraphs shall continue in full force and effect. If a portion, clause, or sentence of any paragraph shall be held by any court of competent jurisdiction to be invalid for any reason, the remainder of such paragraph shall continue in full force and effect.

\* \* \* \* \* \*

The undersigned hereby certifies that the above and foregoing is a true and correct copy of a resolution unanimously adopted by the St. Martin Parish School Board at a Special Meeting thereof duly called, held and convened on August 31, 1965, whereat a proper quorum thereof was present throughout, and the same has not since been rescinded, set aside or revoked.

St. Martinville, Louisiana, this 1 day of September, 1965.

Lee Boulet
——————————————
L. H. Boulet Superintendent
St. Martin Parish Schools