Derek Jerome SINGLETON, Minor, by Mrs. Edna Marie Singleton, His Mother and Next Friend, et al., Appellants,

v.

JACKSON MUNICIPAL SEPARATE SCHOOL DISTRICT et al.,
Appellees.

No. 22527.

United States Court of Appeals
Fifth Circuit.

Jan. 26, 1966.

Jack H. Young, Jackson, Miss., Jack Greenberg, New York City, Joel M. Finkelstein, Atty., Dept. of Justice, Washington, D. C., Derrick A. Bell, Jr., New York City, John Doar, Asst. Atty. Gen., Robert E. Hauberg, U. S. Atty., Washington, D. C., for appellants.

E. W. Stennett, Robert C. Cannada, Thomas H. Watkins, Jackson, Miss., Joe T. Patterson, Atty. Gen. of State of Mississippi, Jackson, Miss., for appellees.

Before WHITAKER, Senior Judge,* and WISDOM and THORNBERRY, Circuit Judges.

WISDOM, Circuit Judge.

This appeal is the precipitate of three earlier appeals by Negro parents of children seeking desegregation of public schools in Jackson, Mississippi. The action was filed in March 1963. The first appeal resulted from the district court's dismissal of the action for failure of the plaintiffs to exhaust administrative remedies. We reversed, with directions that the district court give prompt consideration to the plaintiff's motion for a preliminary injunction. Evers v. Jackson Municipal Separate School District, 5 Cir. 1964, 328 F.2d 408.

On remand, the district court, March 4, 1964, ordered the Board to file by July 15, 1964, a plan that would desegregate at least one grade by September 1964. In April 1964, the trial judge conducted a long hearing in which the Board and the intervenors, certain white parents, offered voluminous testimony to show that allegedly innate racial differences furnish a reasonable basis for classifying school children according to race and therefore justify continued segregation of public schools in Jackson. Although the trial judge made elaborate findings of facts and drew broad conclusions of

* Of the U. S. Court of Claims, sitting by designation.

law in accord with the Board's and the intervenors' contentions, he felt compelled, under Stell v. Savannah-Chatham County Board of Education, 5 Cir. 1964, 333 F.2d 55, to deny the defendants' motion to dismiss and to make final the March 4 order. The Board and intervenors appealed. This Court dismissed that appeal in an opinion published today. It is no longer open to question that a state may not constitutionally segregate public facilities, including public schools. Jackson Municipal Separate School District, et al. v. Evers, No. 21851, consolidated with Nos. 21878 and 21852, 5 Cir., 357 F.2d 653.

July 15, 1964, the Board filed a grade-a-year desegregation plan: pupils entering the first grade in September 1964 were offered a so-called "freedom of choice" in assignment to schools. The plaintiffs objected to the plan as slow, vague and inadequate.[1] The plan required desegregation of only one grade in the 1964–65 school year, and did not contemplate transfers or assignments to former all white schools of Negro children above the first grade. A hearing was held July 29, 1964, in which the Board explained that the plan was based on (1) the disparity in intelligence and achievement between Negro and white pupils, (2) teacher and discipline problems, (3) problems in community acceptance of desegregation. The district court "tentatively approved" the plan and recessed the hearing until February 1965.

After a two-day hearing, the district court entered an order, March 10, 1965, approving the Board's desegregation plan for Jackson public schools. The first grade having been desegregated in September 1964, at least in theory, this plan called for desegregation of the first two grades in September 1965, and two additional grades in each of the succeeding two years, accelerating to three grades a year during the school year commencing in September 1968. With the desegregation of the tenth, eleventh, and twelfth grades in September 1969, the Jackson school system would be totally desegregated *in accordance with the approved plan.*

June 18, 1964, this Court issued three opinions establishing minimum standards for school desegregation plans. Armstrong v. Board of Education of Birmingham, 5 Cir. 1964, 333 F.2d 47; Davis v. Board of School Commissioners of Mobile County, 5 Cir. 1964, 333 F.2d 53; Stell v. Savannah-Chatham County Board of Education, 5 Cir. 1964, 333 F.2d 55. In substance, this Court expressed the view that, subject to some degree of discretion, a desegregation plan should include the following provisions:

(1) desegregation at a speed faster than one grade per year; (2) assignment without regard to race to each pupil new to the system in grades not reached by the plan; (3) simultaneous operation of the plan from both the high school and elementary end; (4) abolition of dual or biracial school attendance areas contemporaneously with the application of the plan to the respective grades; (5) admissibility of Negroes to any school for which they are otherwise eligible without regard to race.

This Court reaffirmed its formulation of these minimum standards in Gaines v. Dougherty County Board of Education, 5 Cir. 1964, 334 F.2d 983; Lockett v. Board of Education of Muscogee County, Ga., 5 Cir. 1965, 342 F.2d 225; and Bivins v. Board of Public Education and Orphanage for Bibb County, Ga., 5 Cir. 1965, 342 F.2d 229.

March 12, 1965, the plaintiffs appealed from the Court's order of March 10 on the ground the Jackson plan failed to meet this Court's minimum standards. That is the appeal now before us in this proceeding.

Because of the usual delays incident to an appeal, the plaintiffs could not expect any relief that would affect the 1965–66 school year. Accordingly, in June 1965, the plaintiffs filed a motion for injunctive relief pending appeal. The United

---

1. 142 Negro students attend formerly white schools in Jackson.

States asked to intervene, certifying that "this case is of general public importance" raising questions "bound to affect the resolution of desegregation controversies elsewhere in the State and in the South". We allowed the intervention.

Meanwhile, in April 1965 the United States Department of Health, Education and Welfare had issued a "General Statement of Policies Under Title VI of the Civil Rights Act of 1964 Respecting Desegregation of Elementary and Secondary Schools." This statement sets minimum standards for desegregation plans of schools applying for federal financial aid[2] and fixes the fall of 1967 as the target date for the extension of desegregation to all grades of school systems not fully desegregated in 1965–66. In an opinion issued June 22, 1965, we stated that we consider it to be in the best interest of all concerned that School Boards meet the minimum standards of the Office of Education.[3] See Singleton v. Jackson Municipal Separate School District, 5 Cir. 1965, 348 F.2d 729. To enable Negro children in Jackson to receive the benefit of the HEW target date of 1967, we granted the plaintiffs' and intervenors' motion for interlocutory relief: we required desegregation of four grades for the year 1965–66, and directed that the plan be redrawn in the light of the HEW standards for compliance with the requirement of Title VI of the Civil Rights Act of 1964. Price v. Denison Independent School District et al., 5 Cir. 1965, 348 F.2d 1010, reaffirms the applicability of the HEW formulae as minimum standards for school desegregation plans.

July 7, 1965, the Board, conforming with the directions of this Court, submitted a new desegregation plan. The new plan calls for desegregation of the first, second, third, and twelfth grades in September 1965 and four grades in September of each succeeding year so that complete desegregation will be accomplished in September 1967.

The United States objected to the plan on various grounds. August 5, 1965, the district court "tentatively accepted" the plan as clarified by the Board in an answer to the Government's objections.

In October 1965, on motion of the plaintiffs-appellants, the Court consolidated this appeal (No. 22527) with Jackson Municipal Separate School District v. Evers (No. 21851), Leake County School Board v. Hudson (No. 21852), and Biloxi Municipal Separate School District v. Mason (No. 21878), 5 Cir., 357 F.2d 653.

I.

Here is a tangled web. A. The Negro plaintiffs appealed only from the district court's order of March 10, 1964 approving the Board's first, and patently inadequate, plan. The Board radically revised the plan in July 1965 in accord with this Court's June 22, 1965, opinion and the HEW standards. The plaintiffs-appellants filed their only brief May 24, 1965. A lot of water has flowed under the bridge since that date. B. The defendants-appellees argue that this Court, by its June 22 opinion directing the district court to issue an injunction requiring a new plan consistent with HEW standards, has already decided the appeal. C. The United States in its brief, filed just a few days ago, contends that the Court "erred in failing to find that the plan proposed by the Board must extend [*immediately*] to all twelve grades in order to satisfy the requirement that desegregation progress with deliberate speed."

A. This is all one matter: judicial approval of a lawful and effective desegregation plan for schools in Jackson, Mississippi. The March 10, 1964 order contemplated that there would be revisions and changes in the Jackson school desegregation plan. We consider, therefore,

2. This Court, for convenience, attached the HEW "General Statement" to its opinion in Price v. Denison Independent School District, et al., 5 Cir. 1965, 348 F. 2d 1010, 1015.

3. See Singleton and Denison, 348 F.2d at 731 and 1013 respectively.

that the revised plans are properly before the Court.

■ B. This appeal was not mooted by the Court's opinion and order of June 22, 1965. The relief granted, 348 F.2d 729, was only tentative relief pending appeal. See F.R.Civ.P. 62(g). In that opinion, although we directed the Jackson School Board to comply with HEW standards, we left to the Board, subject to the approval of the district court, the details of the plan. It appears to the Court that the Board has made a sincere effort to comply with the Court's directions. However, the extent to which the plan meets HEW standards and the validity of all or part of the plan were proper questions before the district court and are now properly before this Court in its determination whether the court below erred in approving the plan.

■ We consider it important to make clear that although we "attach great weight to the standards established by the Office of Education", 348 F.2d 729, we do not abdicate our judicial responsibility for determining whether a school desegregation plan violates federally guaranteed rights. In this respect we agree with the Eight Circuit in Kemp v. Beasley, 352 F.2d 14, decided October 7, 1965: "It is for the courts and the courts alone, to determine when the operation of a school system violates rights guaranteed by the Constitution".

HEW's Statement of April 1965 establishes only *minimum* standards of general application. In certain school districts and in certain respects, HEW standards may be too low to meet the requirements established by the Supreme Court and by this Court; we doubt that they would ever be too high. "[I]n many locations, obedience to the duty of desegregation would require immediate general admission of Negro children, otherwise qualified as students for their appropriate classes, at particular schools." Cooper v. Aaron, 1958, 358 U.S. 1, 78 S.Ct. 141, 3

L.Ed.2d 5. See also Rogers v. Paul, decided December 6, 1965, 86 S.Ct. 358.

■ C. We find the Government's position unclear, if not unreasonable. It is perfectly true, as this Court has said, that the Jackson public school authorities have dragged their feet.[4] But at last a start has been made. In these circumstances, we hold that it is sufficient if the Jackson public schools comply with the HEW's standards, including the objective of total school desegregation by September 1967. Subject to the caveat discussed in section II of this opinion, we do not, therefore, require immediate total desegregation of all twelve grades.

## II.

The Constitution forbids unconstitutional state action in the form of segregated facilities, including segregated public schools. School authorities, therefore, are under the constitutional compulsion of furnishing a single, integrated school system. Administrative problems may justify an orderly transitionary period during which the system may be desegregated several grades at a time. But the existence of this transitory period cannot be used to justify the denial of any individual student's constitutional right to freedom from discrimination. The school children in still-segregated grades in Negro schools are there by assignment based on their race. This assignment was unconstitutional. They have an absolute right, as individuals, to transfer to schools from which they were excluded because of their race.

This has been the law since Brown v. Board of Education, 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873. Misunderstanding of this principle is perhaps due to the popularity of an over-simplified dictum that the constitution 'does not require integration".[5] But there should be no misunderstanding now as to the right of any child in a segregated class to transfer to a formerly all "white" class, regardless of the slow pace of systematic

---

4. *Singleton*, 348 F.2d at 729.

5. "The Constitution * * * does not require integration. It merely forbids dis-

crimination." Briggs v. Elliott, E.D.S.C. 1955, 132 F.Supp. 776, 777.

desegregation by classes. In Rogers v. Paul, decided December 6, 1965, 86 S.Ct. 358, the petitioners were students in the 10th, 11th, and 12th grades of the public schools in Fort Smith, Arkansas. These grades are still segregated. The Supreme Court, in a per curiam opinion, pointed out that the assignments were constitutionally forbidden under Brown v. Board of Education. The Court held that pending total desegregation of the public schools in Fort Smith, petitioners and those similarly situated should be allowed "immediate transfer to the high school that has the more extensive curriculum and from which they are excluded because of their race". The fact that certain courses were offered only at a white high school was, under Sweatt v. Painter, 339 U.S. 629, 70 S.Ct. 848, 94 L.Ed. 1114, additional evidence of discrimination, but the rationale for the decision is that the initial assignment was based on race.

### III.

The United States objected to the July 7 plan on a number of grounds. The Board met some of these objections by an answer in the form of an affidavit by Kirby P. Walker, Superintendent of schools in Jackson District since 1937, clarifying the plan. The district court's order "tentatively accepting" the plan does not take up these objections specifically. In the interest of avoiding future litigation, this Court makes the following comments.

(1) and (2). The United States objects that the plan failed to desegregate all grades in September 1965. As indicated in sections I and II of this opinion, we approve in principle the orderly desegregation of the school system as a system, provided that:

(a) the Board substantially complies with HEW requirements including, specifically, total desegregation of all grades by September 1967;

(b) individuals in grades still segregated are permitted to transfer to schools from which they were origi-

nally excluded or would have been excluded because of their race.

(3) The United States objects that the plan fails to provide for the desegregation of all services, programs, and activities. The Board adequately answers this objection by stating that all public services, buses and other transportation facilities, and all programs and activities "shall be available to all pupils duly enrolled [in a school] without regard to race, color, and national origin".

(4) The plan does not provide for the elimination of race as a factor in the employment and retention of teachers, administrators, and staff personnel. In Lockett, involving a desegregation plan for public schools in Muscogee County, Georgia, decided in February 1965, we held that this question might be "more appropriately considered by the school Board, and the court if necessary, after the desegregation plan had 'progressed to an extent as would justify further consideration of these features'". 342 F.2d at 229. In Board of Public Instruction of Duval County, Florida v. Braxton, 5 Cir. 1964, 326 F.2d 616, 620, however, we affirmed the district court's order requiring the Duval County Board of Education "to put an end to the assignment of teachers and other personnel by race". In a recent decision of the Supreme Court, Bradley v. School Board, Richmond, Virginia, decided November 15, 1965, 86 S.Ct. 224, the Court remanded the case to the district court for an evidentiary hearing on the petitioners' contention that the school desegregation plan allocated faculty on an alleged racial basis. Here, the Jackson Board has gone only as far as to hold joint faculty meetings and a joint inservice program. In view of the necessity that the Jackson school system be totally desegregated by September 1967, we regard it as essential that the plan provide an adequate start toward elimination of race as a basis for the employment and allocation of teachers, administrators, and other personnel.

(5) The United States objects to the failure of the Board to require all students to make an affirmative choice of

school. The Board's answer is that there is no compulsory school attendance law in Mississippi; however, children in the desegregated grades have a free choice of schools.

At this stage in the history of desegregation in the deep South a "freedom of choice plan is an acceptable method for a school board to use in fulfilling its duty to integrate the school system. In the long run, it is hardly possible that schools will be administered on any such haphazard basis. Although this Court has approved freedom of choice plans, we have conditioned our approval on proper notice to the children and their parents and also on the abolition of the dual geographic zones as the basis for assignment. As we said in *Lockett:*

"We approve the use of a freedom of choice plan provided it is within the limits of the teaching of the Stell and Gaines cases. We emphasize that those cases require that adequate notice of the plan to be given to the extent that Negro students are afforded a reasonable and conscious opportunity to apply for admission to any school which they are otherwise eligible to attend without regard to race. Also not to be overlooked is the rule of Stell that a necessary part of any plan is a provision that the dual or biracial school attendance system, i. e., separate attendance areas, districts or zones for the races, shall be abolished contemporaneously with the application of the plan to the respective grades when and as reached by it. Cf. Augustus v. [Board of Public Instruction of] Escambia County [Florida], 5 Cir. 306 F.2d 862, supra. And onerous requirements in making the choice such as are alluded to in Calhoun v. Latimer, 5 Cir., 1963, 321 F. 2d 302, and in Stell may not be required."

(6) The plan fails to provide for the non-racial assignment of students who do not designate a choice of school. This omission is characteristic of a freedom-of-choice plan and one of its inherent weaknesses. Adequate notice and abolition of dual racial zones will tend to ameliorate the effect of this weakness in the plan. In addition, a choice of schools should be available annually, for transfers as well as initial assignments. The HEW requirements provide that "if no choice is made, [the child] shall be assigned to the school nearest [his] home[s] *or on the basis of nonracial attendance zones.*"

(7) There is no merit to the objection that the plan fails to provide students with an additional choice of schools, when the first choice is unavailable. The Board has made it clear that additional choices are available.

(8) There is no serious ambiguity in the plan relating to whether one or both parents must make a choice of schools. This is a minor detail that the Board may be expected to solve satisfactorily.

(9) The Board has eliminated any doubt as to whether a pupil is to attend the chosen school for all classes.

(10) The plan does not provide for individual notices to students and their parents. The Board does provide for publication of the plan August 16, 23, and 30 in a newspaper having a general circulation throughout the district "so as to give all pupils and their parents or guardians notice of the rights that are accorded them, and such publication will also inform them where copies of the form for exercising their rights may be readily obtained." In clarifying the plan, the Board added that it would use newspaper, radio, and television facilities to inform pupils and their parents of their rights; that the entire plan would be published; and that office telephone numbers of the general administrative staff would be listed for calls for information. We regard such notice as adequate.

\* \* \*

To the extent indicated in this opinion, we affirm the district court's tentative approval of the desegregation plan for the Jackson Municipal Separate School District as amended by the resolutions of the Board of Trustees in July 1965 and as

clarified in the Board's answer to objections raised by the plaintiffs and by the United States. In some respects, as pointed out in this opinion, the plan, as amended, falls short of judicially accepted criteria in determining the adequacy of school desegregation plans. Accordingly we remand this action and the other actions consolidated with this cause to the district court for proceedings consistent with this opinion, including proceedings leading toward revision of the plans in accordance with this opinion.

Affirmed in part, reversed in part, and remanded.