**Christine ARCHIE, by her mother and next friend, Mrs. Ada Archie, Appellant,**

v.

**The ALABAMA INSTITUTE FOR DEAF AND BLIND et al., Appellees.**

No. 25889.

United States Court of Appeals Fifth Circuit.

May 31, 1968.

---

Demetrius C. Newton, Birmingham, Ala., Jack Greenberg, Franklin E. White, New York City, for appellant.

Robert P. Bradley, Asst. Atty. Gen., Montgomery, Ala. MacDonald Gallion, Atty. Gen. State of Alabama, Philip H. Smith, Sp. Asst. Atty. Gen. State of Alabama, for appellees.

Edwin Yourman, Atty., Dept. of Health, Education and Welfare, Washington, D. C., Stephen J. Pollak, Asst. Atty. Gen., Nathan Lewin, Attorney, Department of Justice, Washington, D. C., St. John Barrett, Deputy General Counsel, Alexandra Polyzoides, Attorney, Department of Health, Education and Welfare, Washington, D. C., amici curiae.

Before TUTTLE and DYER, Circuit Judges, and MEHRTENS, District Judge.

TUTTLE, Circuit Judge:

This is an appeal from an order of the District Court for the Northern District of Alabama approving a plan of desegregation for the Alabama Institute for the Deaf and Blind at Talladega, Alabama, which plan provided for complete integration of the races as to part of the facilities of the Institute but left available a freedom of choice as to others.

The appellant contends that the plan did not adequately provide for the desegregation of living accommodations or the desegregation of faculties, to the extent heretofore required by the decision of this court in United States v. Jefferson County Board of Education, 372 F.2d 836, affirmed en banc, 380 F.2d 385, cert. denied sub nom. Caddo Parish School Board v. United States, 389 U.S. 840, 88 S.Ct. 67, 19 L.Ed.2d 103, and that it improperly permitted a freedom of choice between the white and Negro schools as to certain grades. The United States as Intervenor particularly challenges this last provision of the plan as being unacceptable for this particular type of institution without regard to whether a freedom of choice plan is still permissible in the ordinary public school system.

The District Court found that at the time of the hearing the several institutions on the three campuses operated by the Institute "have pursued and are pursuing a policy, custom, practice and usage of operating said Institute and the schools composing same upon a racially segregated basis. Certain of the facilities are integrated, but generally the facilities are segregated. There is discrimination in the various areas of the operation of said Institute and the said schools based upon race. All such discrimination contravenes the laws and the Constitution of the United States."

We think it unnecessary to detail at length the provisions of the plan, which to a considerable extent undertook to alleviate the challenged conditions of the past. As to the first contention of appellants here, it is noted that

the brief for appellees states, "and to eliminate any further question about dormitories, the areas that are to be mandatorily integrated, as spelled out by the plan, include dormitories and all other facilities." This is not clear in the plan as approved by the trial court. It must be made so.

■ As to the teaching staffs of the different schools operated by the Institute, this court's Jefferson Parish decision, supra, makes it clear that teaching staffs must be integrated without waiting for the filling of future vacancies on a non-racial basis. Every effort must be made by this institute to comply with this requirement in Jefferson in the same manner as is required of public schools.

With respect to those parts of the Institute's schools that are still, under the plan, to be operated on a freedom of choice plan, we conclude that such a plan is unacceptable for these special type schools. Cf. Green v. County School Board of New Kent County, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968). Moreover, it is to be noted that the Department of Health, Education and Welfare which has thus far not, in its own area of operation, ruled out the concept of freedom of choice as a means to the achievement of complete desegregation, has special requirements for "special education institutions", which it defines as follows: "Special education institutions generally include, but are not limited to, institutions for the blind, deaf, delinquent, mentally retarded, and other handicapped children and special schools for vocational training, such as area vocational schools."

As to special education institutions, the HEW Guidelines provide as follows:

The assignment of children to or within special education institutions on the basis of a "free choice" made by the child or his parent is not acceptable as an alternative to desegregating these institutions. The "free choice" and other provisions of the Revised Statement of Policies for School Desegregation Plans under Title VI of the Civil Rights Act of 1964 (The Guidelines) are generally applicable only to plans for the desegregation of local elementary and secondary school systems.

■ Not only because of the policy heretofore stated on numerous occasions by this court, that the courts should give substantial weight to the policies announced by the Department of Health, Education and Welfare as to the areas of operation with which we are here dealing, United States v. Jefferson County, supra, Singleton v. Jackson Municipal Separate School District (5th Cir.), 355 F.2d 865, but also because as to the institution which is attended by students from far distant places in the state of Alabama, a freedom of choice does not have any common sense application, we conclude that as to the schools of this Institute, mandatory integration must be required throughout. See also Washington v. Lee, 263 F.Supp. 327 (N.D. Ala.1966), affirmed 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212, March 11, 1968, requiring immediate desegregation of state correctional institutions of a juvenile and educational type.

We conclude that the most efficient and prompt manner by which this can be accomplished is to remand the case to the trial court for the purpose of having that court enter a new order carrying into effect the provisions of this opinion. This should be done at the earliest practicable time so that the plan can be fully effective upon the commencement of the next term of school.

The judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

The judgment of this court shall issue forthwith.